THE STATE OF VERMONT v. AARON ABBEY.

*Bigamy.     Evidence.     Statutes   of   another   state.     Negativing*
*exceptions   in   a   statute.     Indictment.*

Upon a trial for bigamy, evidence that the person by whom a marriage ceremony
was performed was reputed to be, and that he acted as a magistrate or minister is
admissible, and is sufficient *prima facie* proof of his official or ministerial char-
acter.

Where a marriage ceremony is performed by a person purporting to be a minister,
and by whom a marriage certificate is given; and one of the parties to the cere-
mony speaks of it as a valid and real marriage, and refers to the certificate in sup-
port of his declaration, and he is subsequently indicted and tried for bigamy on
account of such marriage ceremony, his declarations in reference to it are admis-
sible, both as evidence of identity and of the marriage; and for the former pur-
pose the marriage certificate itself would be admissible in connection with his
declarations respecting it.

The statute books of another state, which purport to be published under its author-
ity, are admissible and proper evidence of its statute laws; and in the absence of
proof to the contrary it will be presumed that the statutes remain unaltered.

Whether exceptions in a statute are to be negatived in pleading, or whether they
are a mere matter of defense, depends upon their nature, and not upon their loca-
tion, with reference to the enacting clause, or upon their being preceded by the
word "*except*" instead of "*provided.*"

The exceptions in a penal statute, which are required to be negatived, are such as
are so incorporated with, and a part of the enactment, as to constitute a part of
the definition or description of the offence.

In an indictment for bigamy, under sec. 5 of chap. 108 of the Compiled Statutes, it is
not necessary to allege that the respondent was not within any of the exceptions
or exemptions specified in sec. 6 of the same chapter, although they are expressly
referred to in the fifth section.

INDICTMENT FOR BIGAMY.  The indictment charged that the
respondent, on the 19th of November, 1830, at Sydney, in the
state of New York, married one Lodema Spickerman, and that
afterwards, on the 20th of June, 1856, at Saratoga Springs, in the
state of New York, he married one Eliza Guernsey, and that
afterwards, on the 21st of June, 1856, at Moretown, in this state,
he continued to cohabit with the said Eliza, his second wife, his
first wife, Lodema, being then alive, &c.   Plea, not guilty; trial
by jury, September Term, 1856, — POLAND, J., presiding.

The government, to prove the marriage to Lodema Spickerman,
called Charles Conkling and Mrs. Mary Ann Bullock, both of
whom testified that they were present, and witnessed the marriage

between the respondent and Lodema Spickerman, in the town of Sydney, in the state of New York, in the fall of 1830; that the marriage ceremony was performed by James Hewson, Esq., who acted and was understood to be a justice of the peace in that place. Conkling testified that said Hewson, for several years before this marriage and after it, was reputed to be and acted as a justice of the peace, that he was a witness in a cause tried before said Hewson as a justice of the peace, about the time of this marriage, and in several cases tried before said Justice Hewson afterwards; that the respondent lived and cohabited with the said Lodema as his wife for several years after said marriage, and had several children by her. Mrs. Bullock testified that after said marriage, the respondent and the said Lodema lived together as husband and wife for some three years, when she (witness) removed from that neighborhood; that she knew said James Hewson, and that she had always understood he was a justice of the peace since she could remember. It was proved and conceded that said Lodema was now alive, and evidence was given tending to prove that the respondent, about two years ago, knew her to be living.

To prove that the respondent.was married to Eliza Guernsey, the government called Caroline Guernsey, who testified that she was a sister of the said Eliza, and was present and witnessed a marriage between them at Saratoga Springs, in the state of New York, on the 20th day of June, 1856, by the Rev. Mr. Woodbridge, a congregational clergyman at that place. That she (witness) and Henry Abbey or Abbott, the defendant's son, went out to find a clergyman to perform the marriage ceremony, and on inquiry, were directed to the house of Mr. Woodbridge, as a clergyman; that Mr. Woodbridge was not then at home, but they made an arrangement with his wife to have the marriage ceremony performed there, and subsequently the respondent and Eliza Guernsey went to the house of Mr. Woodbridge, and were married by him, the said Henry and Caroline attending as witnesses; that Mr. Woodbridge professed to be a congregational clergyman, and performed said marriage ceremony as such, and gave them a marriage certificate, and signed it in her presence, and that she signed it as a witness, and so did the said Henry, by the name of J. T. Bigelow, which was the name by which he then called himself; that the

respondent then called his name Lyman A. Abbott, and that he was married by that name, which the two Miss Guernseys supposed to be his true name; that this was on Friday, and that on the next day the respondent and Eliza came to Moretown, in this state, where they remained until the Monday following, at a house of a brother-in-law of said Eliza; that respondent then called said Eliza his wife, and said they were married at Saratoga Springs by Mr. Woodbridge, a congregational minister, and showed said marriage certificate; and that the respondent and said Eliza cohabited as husband and wife during the time they so remained at Moretown. The respondent objected to the introduction of the marriage certificate in evidence, but the same was admitted, to which the defendant excepted.

To prove the laws of the state of New York, on the subject of marriage, the government read in evidence the revised statutes of New York, the 2d volume of Kent's Commentaries, and cases in New York therein cited, and the 20th volume of Vermont Reports, page 591. There was no other evidence in the case to show the law of the state of New York, and no other evidence to prove that said James Hewson was a justice of the peace, or that said Woodbridge was a clergyman, than as above stated.

The respondent's counsel claimed and requested the court to charge that the evidence was not in law sufficient to prove that Hewson was a justice of the peace, or said Woodbridge a clergyman; also, that the statutes of New York were not sufficient evidence of what the law of New York was in 1856, and that the government were bound to show that the law had not been altered or repealed, prior to 1856. The court declined to charge as requested, but did charge the jury that the evidence in relation to the official character of said Hewson and Woodbridge was proper legal evidence for them to consider, and if they were satisfied that they held the official stations in which they assumed to act, it was sufficient; that, in the absence of all proof that there had been any changes in the law of New York, the legal presumption was that the law continued to be as shown by the statutes of that state.

To the charge, and refusal to charge as requested, the respondent excepted.

The jury returned a verdict of guilty, and after the verdict the

respondent's counsel filed a motion in arrest of judgment for the alleged insufficiency of the indictment, which motion the court overruled; to which the respondent also excepted. The alleged insufficiency in the indictment is sufficiently stated in the opinion of the court.

*Heaton & Reed* for the respondent.

I. This indictment is insufficient for not negating, in either of its four counts, all the exceptions to the 5th section contained in the sixth, and expressly referred to in the fifth. Comp. Stat. p. 560; *State* v. *Butler*, 17 Vt. 146; *State* v. *Barker*, 18 Vt. 195; *State* v. *Palmer*, 18 Vt. 570, 573; *Commonwealth* v. *Maxwell*, 2 Pick. 139; *Rex* v. *Stone*, 1 East 639; *Rex* v. *Jarvis*, 1 East 643, n.; *State* v. *Smith*, 4 Eng. C. Law, 45, 48; 1 Chit. Cr. Law 283; Arch. Cr. Plead. 53.

II. The statutes of the several states may be read in evidence to prove the statute law. *State* v. *Slade*, 1 D. Chip. 303; *Danforth* v. *Reynolds*, 1 Vt. 259; *Adams* v. *Gay*, 19 Vt. 358, 363, 364. The unwritten, or common law, can be proved only by the testimony of witnesses. *Territt* v. *Woodruff*, 19 Vt. 182; Roscoe's Cr. Ev. 137, n. 1; 1 Greenl. Ev. 536; Story's Con. of Laws 530; 3 Philips on Ev. 1142.

III. The marriage certificate of the second marriage was improperly admitted in evidence. It is neither a record or the copy of a record. And there is no law or practice in this state to receive such certificates. It would not be admissible in New York. 2 Rev. St. of New York, 141; or in Mass.; *Ellis* v. *Ellis*, 11 Mass. 92; 3 Phillips on Ev. 1044, n. 702.

*F. F. Merrill*, state's attorney, for the prosecution.

1. Proof of a magistrates acting as such is sufficient, even in a criminal case, without further proof of his official character. 1 Greenl. secs. 83, 92; *Berryman* v. *Wise*, 4 T. 366. *Rex* v. *Verelst*, 3 Camp. 432. *King* v. *Inhabitants of Brampton*, 10 East 288, is directly in point as to marriage.

2. The statutes of New York were properly received in evidence. *State* v. *Slade*, 1 D. Ch. 303; *Danforth et al.* v. *Reynolds*,

1 Vt. 260; 1 Greenl. Ev., secs. 489, 491; *Raynham* v. *Cantan*, 3 Pick. 293.

3. The *presumption* is that laws thus passed continue in force. *Danforth et al.* v. *Reynolds*, 1 Vt. 266; *Lacan* v. *Higgins*, 3 Starkie 178; *Raynham* v. *Cantan*, 3 Pick. 293.

4. The certificate of the last marriage was properly received. It was produced by the respondent to the witnesses, and affirmed to be veritable. The certificate is of itself competent evidence, in connection with the other proof, even if it be not sufficient proof of itself. And, certainly, it was competent to admit it in connection with the deliberate admission of respondent. 2 Greenl. Ev., sec. 49.

5. The indictment is sufficient. Whar. Crim. Prac. 583.

The opinion of the court was delivered by

ISHAM, J. The respondent, under several counts in this indictment, has been convicted of the crime of bigamy. His marriage at Sydney, in the state of New York, with Lodema Spickerman, his former wife, by James Hewson, acting as justice of the peace, was proved by witnesses who were present and witnessed the marriage ceremony. The proof was sufficient, *prima facie* at least, that Hewson was regularly appointed to that office. For several years previous, as well as at that time, he had been, and was in the dischage of the duties of such justice, and was generally reputed to be such in that vicinity. In 1 Greenl. Ev., sec. 92, the rule is given: " That it is not necessary to prove the written appointment of public officers. All who are proved to have acted as such are presumed to have been duly appointed to the office, until the contrary appears, *whether in a civil or criminal case.*" That is the English rule, and which has been generally recognized in this country. *Hopley* v. *Young*, 8 Ad. & Ellis, N. S. 63; 17 Conn. 585; 9 Wend. 17. The same observations may be made in relation to the second marriage of the respondent with Eliza Guernsey, at Saratoga, in the state of New York, by the Rev. Mr. Woodbridge. The actual celebration of that marriage by Mr. Woodbridge, and that he was known and reputed to be a minister in that place, was proved by a witness present at the time

of that marriage. The declarations of the respondent, made a few days after the marriage, and immediately after he came to this state, that Eliza was his wife, that they were married at Saratoga by the Rev. Mr. Woodbridge, was competent evidence, not only of his identity, but of that marriage. *Regina* v. *Simmousto*, 1 Car. & Kir. 164, note (a.); Truman's case, 1 East. P. C. 470; 2 Stark Ev. 894. The certificate of the officiating minister would not probably be evidence of the marriage when offered for that purpose on the part of the state; but when it was referred to by the respondent as evidence of the truth of his declarations, it was properly received in connection with those declarations, to show that he was the person who, under the name of Lyman A. Abbott, was at that time married to Eliza Guernsey.

In relation to the admission of the revised statutes of New York, the rule is now well settled in this and other states, that such statute books, purporting to be published under the authority of the state, are competent proof of its statute law; *Young* v. *Bank of Alexandria*, 4 Cranch 381; *Raynham* v. *Canton*, 3 Pick. 295; *Muller* v. *Morris*, 2 Barr 85; *Danforth* v. *Reynolds*, 1 Vt. 265. Whether the reports of adjudged cases, accredited in the state where made, can be used for the purpose of proving its common and unwritten law, is not a question arising in the case; for though they may have been used for that purpose on the trial of this case, no exceptions were taken for that matter. The exceptions are confined to the admission of the revised statutes. We perceive no error in the ruling of the court, on any matter which arose on the trial of this case before the jury.

A more difficult question arises on the motion in arrest. It is insisted, that it should have been alleged in the indictment that the respondent was not within any of the exceptions mentioned in the act. This objection is urged as fatal to all the counts in the indictment. The Compiled Statutes, 560, sec. 5, provides that: "If any person who has a former husband or wife living shall marry another person, or shall continue to cohabit with such second husband or wife in this state, he or she shall, except in the cases mentioned in the following section, be deemed guilty of the crime of polygamy, and shall be punished," &c. Section 6th then provides: "*that the act shall not extend to any person*, whose husband

or wife has been continuously beyond the sea, or out of the state for seven years together, and the party marrying not knowing the other to be living within that time, nor to persons divorced, or when the marriage has by decree of the court been declared null and void, nor to persons when the former marriage was within the age of consent, and not afterwards assented to. This question, and under this statute, was referred to in the case *State* v. *Palmer*, 18 Vt. 573, but left undecided. It was justly said in the case of *Smith* v. *Moore*, 6 Greenl. 274, that on this subject, "there seems to be many shadowy distinctions, the sound reason and good sense of which are not easily discoverable." The general rule is thus given : "if there is an exception in the enacting clause, the party must negative the exception, and state in the indictment that the respondent is not within it; but if there be an exception in a subsequent clause, or subsequent section of the statute, it is a matter of defense, and is to be shown by the other party." 18 Vt. 573, 197; 17 Vt. 149. The rule is founded on the general principle, that the indictment must contain the statement of those facts, which constitute an offense under the statute. A *prima facie* case must be stated; and it is for the other party for whom matter of excuse exists, to bring it forward in his pleading or defense. In saying that an exception must be negatived when made in the enacting clause, reference is not made to sections of the statute, as they are divided in the act; nor is it meant, that, because the exceptions are contained in the section containing the enactment, it must for that reason be negatived. That is not the meaning of the rule. The question is, whether the exception *is so incorporated with, and becomes a part of the enactment, as to constitute a part of the definition or description of the offense;* for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner. "*It is the nature of the exception and not its location,*" which determines the question. Neither does the question depend upon any distinction between the words "*provided*" or " *except* " as they may be used in the statute. In either case, the only inquiry arises, whether the matter excepted, or that which is contained in the proviso, is so incorporated with, as to become, in the manner above stated, a part of the enacting clause. If it is so

incorporated, it should be negatived, otherwise it is a matter of defense. These rules are sustained by the authorities as they are collected in 8 Amer. Jurist 233, and 1 Lead. Crim. Cas. 255, and note. It is said, that there is a middle class of cases, namely, where the exception is not in express terms introduced into the enacting clause, but only by reference to some subsequent clause, or prior statute; as where the words "*except as hereinafter mentioned*," or words of similar import are employed; and that in those cases the exceptions must be negatived. 1 Lead. Crim. Cas. 260. The statute on which this indictment is framed has in the section of its enactment a reference to the subsequent section for an enumeration of the cases to which the act does not extend. This case would seem to fall within that classification. The necessity in such cases of negativing the exceptions in the indictment, cannot arise from the mere fact that a reference to the excepted cases is made in the section containing the enacting clause. There is no greater reason in that rule, than in saying, that the exceptions of a statute must in all cases be negatived, because they are placed in the section containing the enacting clause, as they may be divided in the act; a rule, discarded by elementary authors, as well as by adjudged cases. The same principle should govern this class of cases which governs other classes, and the exceptions should be negatived only where they are descriptive of the offense, or define it; but where they afford matter of excuse merely, they are to be relied upon in defense. The question is one not only of pleading, but of evidence, and where the exceptions must be negatived in the indictment, the allegations must be proved by the prosecution, though the proof may involve a negative; *State* v. *Butler*, 17 Vt. 150. As the same reasons exist in one class of cases that exist in the other, the same principle should apply. The case *State* v. *Barker*, 18 Vt. 195, is a good illustration of the rule where the exception in the statute should be and was required to be negatived. Not all labor and business on the Sabbath is forbidden by the statute on which that prosecution was had, but that only which is *unnecessary*, and which is not a matter *of charity*. That exception defined the kind of labor forbidden, and qualified the whole enacting clause. The same rule was recognized in the case *Smith* v.

*Moore,* 6 Greenl. 236. It was not every neglect by the executor to file the will within thirty days that constituted the penal matter, but it was the *unexcused neglect ;* thus defining and qualifying the act which constituted the matter for which the penalty was given. To prove that the executor *neglected* to file the will within thirty days would not make even a *prima facie* case; it must also be proved that it was *unexcused.* For that reason it was held the exception should be negatived. The cases *Spieres* v. *Parker,* 1 Term 141; *Gill* v. *Scrivens,* 7 Term 27, rest upon the same ground. The case of *Commonwealth* v. *Hart,* 1 Lead. Crim. Cas. 250, is a forcible illustration of the rule, where exceptions in a statute should be, and where they are not required to be negatived. The act of 1852 in Massachusetts, provided that " No person shall be allowed to be a manufacturer of any spirituous or intoxicating liquors for sale, or a common seller thereof, *without being duly authorized,* on pain of forfeiting," &c. " Provided, that nothing in the act shall be construed to prevent the manufacture or sale of cider for other purposes than that of a beverage, or the sale and use of the fruit of the vine for the commemoration of the Lord's Supper." The words " *without being duly authorized*" defined and qualified the act forbidden by the statute. It was not all sales or manufacture of intoxicating liquor which were forbidden, but only such as were unauthorized; hence the want of authority should be averred and proved, though it might involve the proof of a negative. But the matter embraced in the *proviso* did not define, qualify, nor was it descriptive of the matter prohibited in the enacting clause. When it was alleged in the indictment, and proved on trial, that the respondent was a common seller of spirituous and intoxicating liquors without being duly authorized, the offense was fully made out; a *prima facie* case was alleged and proved, and it was for the defendant to prove that he was within any of the cases mentioned in the proviso. The case of *Steel* v. *Smith,* 1 Barn. and Ald. 94, is of the same character, and is so considered by Metcalf, J., in the case above cited. See also *Rex* v. *Pierce,* R. & R. C. C. 174; *Rex* v. *Robinson,* ib. 321. In the case of *Rex* v. *Baxter,* 2 East P. C. 781, 5 Term 83, the act provided that " in all cases where goods have been stolen, except where the person committing the felony shall have been already convicted, &c.,

every person, who shall buy or receive such goods, knowing them to have been so taken, shall be deemed guilty," &c. In this act, it will be perceived that the exception is contained in the body of the enacting clause ; still, it was held that it was matter of defense, and need not be negatived in the indictment. It is difficult to make a distinction between that case and the one under consideration. It may be true, that one of the arguments of Buller, J., is not sustained by later authorities, but we do not perceive that the case itself has ever been questioned in any adjudication of the court in that country, or in this. The doctrine of that case is approved in Archb. C. P. 153 ; 3 Chitty, C. L. 959, and rests upon the authority of *Rex* v. *Pollard*, 2 Ld. Ray. 1370.

The fifth section of the act on which this indictment is drawn contains the enacting clause ; in which the exceptions are made of those cases which are specified in the sixth section. The cases excepted do not *define or qualify* the offense created by the enacting clause. If the facts are alleged in the indictment, and proved on trial, that the respondent had a former husband or wife living, and married another person, or continued to cohabit with such second husband or wife in this state, the offense is fully made out. A *prima facie* case is stated and proved. If, in fact, the former husband or wife of the respondent had been continually beyond the sea, or out of the state for seven years together, and the respondent had married again, not knowing the other to be living within that time, or if the respondent had been divorced, or the marriage had been declared null and void by the sentence of a court, or if the former marriage was within the age of consent, and not afterwards assented to, those facts should be relied upon and proved by the respondent in his defense. As was observed by the court in the case *State* v. *Barker*, 18 Vt. 197, " the facts are peculiarly within the knowledge of the respondent," and the *onus* of their proof should rest on him.

The sixth section declares that : " The provisions of the preceding section *shall not extend* to any person," &c. This is strictly an exception, and " that which is excepted out of an act is out of its provisions ; " as much so, as if the act had never been passed. Cases excepted from the act necessarily do *not define, qualify*, or in any *way affect* the provisions of the enacting clause. It is a

statutory provision overriding the whole act, that to those cases the act does not extend. In such cases exceptions need not be negatived, but are to be treated as matters of defense, and are to be relied upon by the respondent as such ; *Lawton* v. *Hickman,* 9 Adol. & Ellis, N. S. 563 ; 58 Eng. Com. Law 561, 588 ; *Thibault* v. *Gibson,* 12 Mees. & Wels. 94, and note ; *Simpson* v. *Ready,* ib. 734. The difficulty and impracticability arising from a different construction of the act, is itself a good reason why it should not be adopted ; particularly as all the matters embraced in those exceptions are peculiarly within the knowledge of the respondent. This being the only objection taken to the several counts in this indictment, we think the motion in arrest must be overruled.