The State v. O'Gorman.

THE STATE v. O'GORMAN, *Appellant.*

| 68 | 179 |
| 136 | 352 |

1. **Clerk's Liability for failure to report fees.** The criminal liability of the clerks of the several courts of this State for failure to file a statement at the end of each year, of the fees and emoluments received during the year, attaches immediately upon the expiration of the year, and not at the end of thirty days thereafter. It is the liability to a civil action which does not accrue till the thirty days have elapsed. Wag. Stat., §§ 29, 31, p. 631.

2. **Pleading, Criminal:** NEGATIVING EXCEPTIONS IN STATUTES. Where a statute required the clerks of courts, at the end of each year, to file a statement of the fees and emoluments received during the year, and made it a misdemeanor to fail to comply with this requirement, but excepted certain cases from the operation of the act,

*Held,* that an indictment under the act need not show that the case was not one of those excepted.

3. **Fraud in Office.** The third count of the indictment in this case, examined and held good as an indictment for fraud in office under Wag. Stat., sec. 17, p. 487.

4. ———: EVIDENCE. Upon the trial of an indictment against a county clerk for failing to make the annual statement required by law, showing the amount of fees and emoluments received from his office during the year 1874, evidence offered by the State showed that he had made such statements in previous years. *Held,* that such evidence did not prejudice the defendant, and the admission of it was no ground for reversing a judgment against him.

5. **Instructions.** A party cannot complain if the court so modifies one of his instructions as to make it necessary for the other party, in order to sustain his case, to prove more than the instruction, as offered, required.

*Appeal from Lafayette Criminal Court.*—HON. WM. H. H. HILL, Judge.

The appellant, who was the former clerk of the county court of Layfayette county, was indicted at the June term, 1875, of the criminal court, for fraud in office. The indictment contained three counts, the second of which was abandoned at the trial. The first count charged that defendant "being the clerk of said court from January 1st, 1871, to January 1st, 1875, did, on the 1st day of January, 1875, and at the end of the year 1874, willfully, corruptly, knowingly, &c., fail and refuse to file a statement in detail, under oath or affirmation, showing the aggregate amount of fees and emoluments received by him as clerk for the year 1874."

The third count charged that " defendant, during his term of office, and on the 18th day of November, 1874, did, willfully, corruptly, fraudulently, &c., represent and show that he had not received, for the year 1874, in the aggregate of all official fees and emoluments, more than the sum of · $2,500, after deducting such sums as were necessary and proper for the payment of deputies and assistants ; and that there was no surplus to pay into the county treasury ;

and did then and there procure the court to receive the said statement, and. discharge the said defendant from making any further statement or settlement of official fees for the year 1874, and did so cause the court to make said order, whereas, in truth, the fees for said year amounted to $7,764, and leaving a balance, after deducting $2,500 and reasonable deputy hire, of $2,598; that he did, with the intent to cheat, cause and procure said false settlement and discharge to be made, and is, therefore, guilty of a fraud in office."

Defendant filed a motion to quash the indictment, the grounds of which are stated in the opinion of the court. This motion was overruled, and defendant excepted.

At the trial the State offered the records of the county court as follows: 1. November 18th, 1874. Now comes James O'Gorman and states that the fees received by him in 1874 do not exceed the amount allowed by law, and the court being satisfied from this statement that such fees do not exceed that amount, settles with him—to which the defendant objected, as the same was illegal and incompetent, as the same was made at a time when the defendant could neither make or the court act upon such a statement, and the statement did not appear to be under " oath or affirmation." The objection was overruled and defendant excepted. 2. January 1st, 1875, O'Gorman ordered to appear and settle at adjourned January term. 3. January 18th, 1875, O'Gorman appears and offers settlement. 4. Steele ordered to examine records, and write to State auditor and report at next term of court amount of fees received by O'Gorman. 5. So much of record as showed Steele did make a report. 6. Order reciting—whereas O'Gorman, through his deputy, represented to county court on the 18th day of November, 1874, that his fees did not exceed amount allowed by law, and proper deputy hire; whereas, at January term, 1875, he stated they amounted to $5,979.16; and whereas, subsequent investigation by Steele showed $7,764.99 was received, and O'Gorman swore this

was correct; and whereas, he was then ordered to pay $2,-598.35 into the treasury, and has not done so, the prosecuting attorney is ordered to bring suit, and these proceedings to be certified to the grand jury, to meet in a few days.

Wm. B. Steele, for the State, testified that he was the present county clerk. The county court was in session December 21st, 1874, and adjourned to January 4th, 1875. With reference to order of November 18th, 1874, he never saw any statement in detail or under oath; all he saw was the record; a short time after defendant was cited to appear before the county court and make a settlement, he came into the office and wanted witness to assist him in examining the records, and get an account of all the fees he had ever received; I did assist him; he called off the amounts and I set them down; found several amounts not on the index; we tried to get all items; I made out the list; O'Gorman brought it into court, but would not swear that it contained all the fees, as he might have overlooked some; we found a few items not indexed; the order of the 18th day of November, 1874, is in the handwriting of Dulin, O'Gorman's deputy; there is no statement in detail for 1873; there is an order on record showing that defendant settled with the court, and that the court was satisfied by the evidence; likewise for 1871 and 1872 the court was satisfied by the evidence and settled; witness did not know what evidence was before the court; witness examined the records for 1871, 1872 and 1873, and found no settlement in detail or under oath for these years; it does appear from the record that defendant appeared and settled each year, but not in detail. Defendant objected to all evidence as to these years, because it is not charged that he failed to settle for these years, and the only tendency of the evidence is to show defendant guilty of another and distinct offense.

J. A. Quarles, deputy under Steele, testified about the same as Steele; and in addition, that the settlement of de-

fendant being continued to the February term, 1875, defendant appeared and swore to a statement on which the court settled; witness stated that it was a correct statement; defendant claimed that the order of November 18th, 1874, was made without his knowledge, and he never claimed the benefit of it or relied on it before the county court; all fees received by defendant can be found from his books; the books are correct; he told me I was more familiar with the books than he was, and for me to go over them and see that all the fees were included in his statement.

The State then read the orders of settlement for the years 1871, 1872 and 1873, and also read in evidence a detailed statement of the fees for those years prepared by the witness Quarles. This statement was prepared from the official records and papers of the county, and showed that defendant had received during the year 1871, $7,604.39; during the year 1872, $9,825.36, and during the year 1873, $7,783.77. Defendant objected for the reason stated above, and also because the books were the best evidence.

For the defendant Judge Steunkel, one of the justices of the county court, testified that on the 18th day of November, 1874, as court was about to adjourn, Dulin, the deputy, said, "What about O'Gorman's settlement?" The presiding judge asked if the county attorney had approved it, and Dulin said "Yes," and presented a paper with the county attorney's name to it, and the presiding judge then said, "Let the order be made;" defendant was not present; he made no affidavit or statement to the court on November 18th, 1874, or before; he neither said nor did anything.

The state asked four instructions, which were given:

1. If defendant was county clerk for the year 1874, and his fees and emoluments for that year were in excess of $2,500 and reasonable deputy hire, as allowed by the county court; and if, on the 1st day of January, 1875, or at the end of the year 1874, he failed and refused to file a detailed report, and deliver the same to the justices, with

the intent, &c., of defrauding the county of the surplus over $2,500, or such sum as allowed by the court, then the jury should find defendant guilty on the first count.    2. If, as clerk, &c., he procured, or caused to be procured, from said court, the order (November 18th, 1874,) discharging him from all liability for such surplus, with the intent, &c., the jury will find defendant guilty on the third count.    3. If there was a large amount in excess of $2,500 and deputy hire, as fixed by the court, and he failed and refused to file under oath or affirmation a detailed statement at the end of the year of fees for 1874, with the intent to appropriate such surplus, and not account for the same, such intent was unlawful and corrupt; and if he procured, or caused to be procured, the order discharging him from liability (order of November 18th, 1874), with the intent, &c., the jury will find him guilty.    4. If clerk, it was his duty, at the end of the year 1874, or prior to the 3d day of January, 1875, to make out and deliver to the county court a statement in detail, under oath, showing his fees; and if he willfully and corruptly failed and refused to make the statement, the jury will find him guilty.

The following instructions asked by defendant were given:    1. By the first count of the indictment the defendant is charged with a misdemeanor in not having filed, at the end of the year, a detailed statement in writing, under oath, showing the aggregage amount of all official fees received by him as county clerk for the year ending January 1st, 1875, and although the jury may believe and find from the evidence that the defendant failed to file said statement at the end of the year, yet, if the jury further find that he did afterwards file said statement, under oath, and that the same was received and approved by the county court, then the jury will find the defendant not guilty as to said count, unless they should further find and believe from the evidence that he failed to file said statement at the end of the year with intent to cheat and defraud the county, or from some other willful or corrupt motive.    2. In order to con-

stitute a misdemeanor, as charged in the first count of the indictment, it is necessary that the intent and the act upon the part of the defendant must correspond, and although the jury may find from the evidence that the defendant failed to file said itemized statement at the precise time required by the statute, yet, in order to constitute a misdemeanor the jury must find that defendant willfully and corruptly failed to file said statement with intent thereby willfully and knowingly to commit a fraud upon the county. 3. Although, by the language of the statute, defendant is required to file said itemized statement, under oath, at the end of the year, and if he fails to do so, he may be guilty of a technical violation of the law, yet, in order to constitute a misdemeanor, it is necessary that said failure should have occurred upon the part of defendant, with intent, upon his part, knowingly and willfully, to commit a fraud upon the county, or from some other willful or corrupt motive.   5. The guilt of defendant cannot be inferred, but must be proven either by direct or circumstantial evidence, but before the jury can find defendant guilty on circumstantial evidence alone, the facts and circumstances must all point to his guilt and be irreconcilable with any other rational conclusion ; and before the jury can find defendant guilty on circumstantial evidence alone, the circumstances must not only be consistent with his guilt, but inconsistent with any other reasonable hypothesis.

The court gave the following instruction asked by defendant, adding, however, the words included in parenthesis :   4. The jury are instructed that in third count of the indictment the defendant is charged with fraud in office as the clerk of the county court, in this, that he did falsely and fraudulently procure and induce the county court, on the 18th day of November, 1874, to settle with him for the fees received by him, as such clerk, for the year 1874, and did falsely and fraudulently represent and state to the court that the amount of fees received by him for said year did not exceed the sum of $2,500, and a reasonable sum for

deputy hire, whereas he had received an amount largely in excess of said sum, and that, by such representation, he did falsely and fraudulently procure the county court to make an order discharging him, the said O'Gorman, with the intent to cheat and defraud the county of Lafayette. Unless the jury believe from the evidence that the defendant did represent, or cause to be represented, (falsely and fraudulently, with the intent to cheat and defraud the county,) that he had not received more fees than was allowed by law, and unless he, the defendant, did induce and procure, or cause to be induced and procured, the county court, by his representations and statements to it, to enter and make the order read in evidence, dated November 18th, 1874, you will find defendant not guilty on the third count.

The defendant asked the following instructions, (in substance,) which were refused:

6. If the jury believe that the court was not in session on December 31st, 1874, or January 1st, 1875, that it did not meet till the 4th of January; that on meeting, the court made an order notifying defendant to appear and file a detailed statement of fees for the year 1874; that he did appear and file such statement, which was approved and accepted by the court, they would find defendant not guilty.

7. That if the jury believe that a statement in detail was not filed until March 1st, 1875, for the reason that from January 4th up to said date, the court had adjourned the hearing of said settlement from time to time, that its then present clerk might examine the records to ascertain said fees; that on March 1st said examination was completed, and defendant made his statement in detail and under oath, which was accepted and approved, and that the then clerk also made his report, that defendant did not fail to file said report corruptly and willfully for the purpose of defrauding the county, but in order that he and others might fully examine the records and books, and get a full, complete and true list of fees, they would find defendant not guilty.

8. If they believe from the evidence that the term of

defendant's office expired on the 31st day of December, 1874; that neither on that day or the 1st day of January, 1875, was the court in session, they would find the defendant not guilty on the first count.

9. That the defendant was required to file a statement in detail of all fees received, or he could dispense with such statement if the court should be satisfied by other evidence as to the amount of such fees, and that the clerk had not only until the end of the year, but also thirty days after the close of each year in which to file such statement; that if the jury believe that the court was not in session at the end of the year 1874; that afterwards, and within thirty days, the court met and cited defendant to appear and make a settlement; that in obedience to said citation he did appear to make a settlement, whereupon the court continued his settlement till the February term; that at this term the then present clerk was ordered to examine the books and papers, and correspond with the State auditor, and the settlement was continued until March; that at said March term defendant made his statement, which was accepted, they will find defendant not guilty.

10. If the jury believe the order of November 18th, 1874, was made on the representation or statement of Dulin; that O'Gorman was not present, did not appear, did not make any statement or showing to the court, did not file any affidavit or statement showing the amount of fees, and did not, by any such statement procure or induce the court to make said order they will find defendant not guilty on the third count.

12. The orders of the court settling with defendant for 1871, 1872 and 1873, as also the tabular statement of fees for those years made out by witness Quarles, and all evidence relating to those years was admitted solely as bearing on the intent of the acts and conduct of defendant in 1874, and there was no evidence to show that the settlements for 1871, 1872 and 1873 were obtained by false or fraudulent representations, nor what was a reasonable sum

for deputy hire for those years; that said orders having been made by a court of competent jurisdiction on what purports to have been competent and satisfactory evidence to said court, all evidence as to said years is excluded and withdrawn from the jury.

Defendant was convicted, and appealed to this court.

*Rathbun & Shewalter* for appellant.

*J. L. Smith,* Attorney-General, for the State.

HENRY, J.—The motion to quash the indictment was properly overruled. The first count charged defendant

1. CLERK'S LIABIL-
ITY FOR FAILURE
TO REPORT FEES.

with a failure, at the end of the year 1874, to file a statement in detail, under oath or affirmation, showing the aggregate amount of fees and emoluments received by him as clerk for the year 1874. His counsel contend that, in order to be sufficient, it should have been alleged that he failed, neglected and refused, for thirty days after the expiration of said year, to file such statement. Wag. Stat., sec. 29, p. 631, requires "the clerks of the several courts, &c., except as hereinafter provided, at the end of each year during their respective terms of office, to deliver to the judge, or judges, of their said courts, under oath or affirmation, a statement in detail, showing the aggregate amount of all fees and emoluments received by them as clerks during the year last past." Section 31 provides that "any clerk who shall fail, neglect or refuse, for thirty days after the expiration of each year of his office, to file such statement, except as set forth in the *fifth section of this act, shall be liable on his official bond for the surplus which the court may, upon investigation and ex-

---

*The section here referred to is the fifth in the act as originally enacted. Acts 1868, page 54. In Wagner's Statutes it is numbered 33, and is as follows: This act shall not apply to any clerk who, at the time required by the first (29th) and fourth (32d) sections thereof, shall, by his affidavit or other testimony, fully satisfy the court of which he is clerk that all the fees and emoluments of his said office for and during the year last past, do not exceed the sum of $2,500. See page 632.

The State v. O'Gorman.

amination of evidence find to be due from him, after deducting from the aggregate amount of his fees and emoluments for the year last past, the sum of $2,500, and a reasonable amount for the payment of deputies and assistants, where the same were employed; and if any clerk should fail, neglect or refuse to pay into the county treasury the amount ordered by the court to be paid by him within the time required by the second section of this act, (ten days.) he shall be liable on his official bond for the sum so ordered to be paid by him into the county treasury; and in all cases in which any clerk shall not file a statement within the time prescribed by this act, &c., he shall be deemed guilty of a misdemeanor in office," &c.   The argument of the defendant's counsel is, that the time prescribed by the 29th section for filing the statement is enlarged by the 31st section, but we think it very clear that the provision in section 31, in regard to a failure to make the statement within thirty days after the expiration of the year, has no reference or application to the criminal aspect of the statute, but only to the civil proceeding therein expressly authorized.   The 29th section absolutely requires the statement to be made at the end of the year, and the latter clause of the 31st section makes a failure to do so a misdemeanor in office.

It is further urged that the indictment should have negatived the exceptions in section 33, because it is referred 2. PLEADING, to in section 31, which makes the failure of CRIMINAL. nega- the clerk to file the statement a misdemeanor. tiving exceptions in statutes.   The opinion of the court in the case of *Com. v. Hart*, 11 Cush. 130, sustains this view, but the question was not directly involved in that case, and in support of the position the court only referred to two English cases. To the contrary is Chitty, 1st Crim. Law, 283, 284.   Bishop in his work on criminal procedure says, the doctrine laid down by Chitty is that which is generally followed in the United States.   The *State v. Abbey*, 29 Vt. 65, is directly in point.   A statute of that State provided that: " If any person who has a former husband or wife living, shall marry an-

other person, or shall continue to cohabit with such second
wife in this State, he, or she, shall, except in the cases men-
tioned in the following section, be deemed guilty of the
crime of polygamy, and shall be punished," &c.   Section
6 provided that " the act shall not extend to any person
whose husband, or wife, has been continuously beyond the
sea or out of the State for seven years," &c.   The court
held it unnecessary to negative the exceptions in the 6th
section.

A *nolle prosequi* was entered to the second count.

The first objection to the third count is, that it did not
allege that defendant failed, neglected and refused to file
3. FRAUD IN OF- such statement within thirty days after the
FICE.
expiration of the year.   This was unnecessary.   The third
count is an indictment for a violation of Wag. Stat., sec. 17,
p. 487, which makes it a misdemeanor for any officer, or pub-
lic agent of this State, to commit a fraud in his official ca-
pacity or under color of his office.   The allegations are, that
defendant willfully, corruptly and fraudulently made a
false statement and procured the court to receive said state-
ment and make an order discharging him from making any
further statement, and that this false and fraudulent state-
ment was made corruptly and falsely, with the intent to
cheat and defraud the county and the inhabitants out of
the surplus, &c.   It contained all the allegations necessary
to charge an offense under said section 17.

The second objection to this count is, that it does not
allege that " the defendant did not, during the time required
by law, by his affidavit, or other testimony, satisfy the
court that the fees and emoluments of his said office did
not exceed the amount allowed him by law."   The answer
to this is that defendant, by this count, is not indicted for
a violation of the act in relation to fees, Wag. Stat., p.
631, but for a violation of section 17, *supra*.   If, however,
he had been indicted under the former statute, we have
seen that it would have been unnecessary to negative the
exception contained in section 33.

On the trial the court permitted the State to show that defendant had, for the previous years, and within the time 4. ——: EVIDENCE prescribed by the law, delivered to the judges of the court of which he was clerk, his annual statement. We cannot see how defendant was prejudiced by evidence tending to show that, for the preceding years he had complied with the law. If the State had been permitted to show, that in any previous year he had failed to comply with the requirement of the law, a different question would have been presented.

The modification by the court of the fourth instruction asked for by defendant, of which defendant complains, 5. INSTRUCTIONS. certainly made the instruction more favorable for defendant than it was before the change was made. As presented by defendant, it declared that unless the jury believe from the evidence that defendant did represent, or cause to be represented, that he had not received more fees, &c. The court inserted after the word " represented" the words " falsely and fraudulently with the intent to cheat and defraud the county," thus requiring not only that they should find that the defendant made the representation, which was the form of the instruction as asked by defendant, but that they should also find that it was falsely and fraudulently made, &c., before he could be convicted. Why defendant complains of that alteration of the instruction we cannot comprehend.

The objection to the second instruction is, that under the third count there was no proof that defendant made any statement to the court, or introduced any evidence as to amount of fees received by him. The records of the county court, introduced in evidence, and the testimony of Steele tended to prove that O'Gorman did make a statement to the court of fees, &c. received by him, and procure the order discharging him.

The instructions given by the court fully and fairly presented the law of the case to the jury, and the substance of those refused which were not objectionable, was

embraced in those given. The record is voluminous, and the instructions numerous and prolix, and it is unnecessary to comment upon them severally and in detail. We are satisfied that no material error was committed by the court, and its judgment is affirmed. All concur.

AFFIRMED.