[Cr. A. No. 1557. Appellate Department, Superior Court, County of Los Angeles.—April 28, 1939.]

THE PEOPLE, Respondent, v. SOL TILKIN et al., Appellants; THE PEOPLE, Respondent, v. JAMES MEEKS et al., Appellants.

Gallagher, Wirin & Johnson for Appellants.

Ray L. Chesebro, City Attorney, W. Joseph McFarland, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.

BISHOP, J.—We have reached the conclusion that there is a fundamental difference between the form and the substance of those provisions of the recently adopted initiative ordinance of Los Angeles city (ordinance number 80170) dealing with picketing, and that, as the complaints on which the judgments were based followed the form rather than the substance of the ordinance, the judgments must be reversed.

The following four sections of the ordinance are involved, under our interpretation, in the prosecutions under review: Section 3. "It shall be unlawful for any person to picket in or upon any public place, or in or upon any private place within the view of any person or persons who are in or upon any public place, in a manner calculated or with the intent to induce or influence any person to refrain from entering, occupying or leaving any place of business, or to refrain from performing services of labor, or to refrain from seeking or obtaining employment, or to refrain from purchasing, selling, using, delivering, transporting or receiving any goods, wares, merchandise, services, entertainment, accommodations or articles, or to refrain from attempting to do any of the foregoing."

Section 4. "The provisions of Section 3 hereof shall not apply to picketing at a place of business by the persons and in the manner in this Section 4 described if all of the con-

ditions hereinafter specified in this Section exist and if such picketing be conducted by the persons, in the manner and subject to the limitations, provisions and regulations hereinafter in this Section set forth, to-wit:

"(a) If a *bona fide* strike shall be in progress at a place of business and a majority of the striking *bona fide* employees of the employer at such place of business shall have designated in writing certain of their number to act as pickets and shall have appointed in writing a representative or representatives to certify to the facts concerning such *bona fide* strike and to the designation of such pickets, such place of business may be picketed by such *bona fide* employees so designated, provided that each of such picketing employees shall have upon his or her person and exhibit at any time when acting as such picket, upon request of any police officer, a writing signed by such representative, certifying to the existence of a *bona fide* strike at such place of business and also certifying to his own designation as such representative and to the designation of such *bona fide* employee to act as such picket. It shall be unlawful for any person to so certify to statements in such writing which he knows to be untrue or which he has no reasonable grounds to believe to be true.

"(b) No *bona fide* employee so designated to picket a place of business shall picket such place of business where at the same time more such designated *bona fide* employees are engaged in picketing such place of business than a number equal to one picket for each entrance to such place of business abutting upon a public place, provided, however, that the limitation of numbers provided by this subsection (b) shall in no case reduce the lawful number of such pickets to less than two persons picketing the same place of business. If the number of such designated *bona fide* employees so engaged in picketing exceeds the maximum number permitted by this subsection (b), then each and all of the persons so picketing shall be guilty of violations of this Ordinance notwithstanding any provision of this Section 4.

"(c) The activity of any such *bona fide* employee while so picketing such place of business shall be limited to patrolling upon the public places in front of or about such place of business and to wearing or carrying such an arm band or other banner as is permitted by Section 6 of this Ordinance.

"(d) In the event a *bona fide* strike exists at some but not all of the places of business of an employer, those places of business of such employer at which no *bona fide* strike exists may not be picketed.

"(e) No two such *bona fide* employees while so picketing such place of business shall be within less than twenty-five (25) feet of each other."

Section 5. "It shall be unlawful for any person to carry, show or display any banner in or upon any public place, or in or upon any private place within the view of any person who is in or upon any public place, in front of, in the vicinity of, or about any place of business, or any of the approaches leading thereto or therefrom (i) in a manner calculated or with the intent to threaten, intimidate, coerce or put in fear any person who is entering, occupying or leaving any place of business or who is performing any services or labor, or who is seeking or obtaining employment, or who is purchasing, selling, using, delivering, transporting or receiving any goods, wares, merchandise, services, entertainment, accommodations or articles, or who is attempting or seeking to do any of the foregoing, or (ii) in a manner calculated or with the intent to induce or influence any person to refrain from entering, occupying or leaving any place of business, or to refrain from performing services or labor, or to refrain from seeking or obtaining employment, or to refrain from purchasing, selling, using, delivering, transporting or receiving any goods, wares, merchandise, services, entertainment, accommodations or articles, or to refrain from attempting to do any of the foregoing."

Section 6. "Notwithstanding the provisions of section 5, a *bona fide* employee while carrying on lawful picketing within the provisions of section 4 hereof may wear or carry an arm band or other banner not exceeding twenty (20) by thirty (30) inches in size, which arm band or other banner shall set forth (i) the name or initials of the organization represented by the person wearing or carrying such arm band or other banner, and (ii) the word 'picket', and may also set forth (iii) the statement that a strike is in progress at the place of business so being picketed, including the name or address of such place of business so being picketed, but such arm band or other banner shall have thereon no other words, lettering, numbering, picture or design whatsoever."

■ We would have no fault to find with either of the two counts in the complaint if we could agree with the People's interpretation of the ordinance. The People's contention, which finds support in the form in which the ordinance is drawn, is that the function of sections 4 and 6 is to set forth exceptions to offenses which are created by sections 3 and 5, respectively. It is with this contention, and hence with the conclusion that the two counts are adequate, that we disagree. We are of the opinion that in any case where section 4 is involved, it and section 3 must be read together, and that sections 5 and 6 must be read together, to determine the offenses which have been created. A charge, therefore, such as count 1, which simply alleges that, as defined earlier in the ordinance, the defendants did picket in the vicinity of and about a place of business contrary to section 3 without declaring that they did so contrary to any of the regulations of section 4 fails to state a public offense. ■ So, also, a count, as we find is true of count 2, which states facts showing the violation of section 5 but fails to aver that they were done contrary to any of the provisions of section 6, fails to state a public offense. We are construing the charge of count 1, that the defendant did picket ''in the vicinity of and about a place of business'', as making applicable the language of section 4 which concerns itself with picketing ''at a place of business''. (*County of Los Angeles* v. *Hannon*, (1910) 159 Cal. 37 [112 Pac. 878, Ann. Cas. 1912B, 1065].) We are not faced, therefore, with a complaint which presents a charge that the provisions of section 3 have been violated at some place where section 4 is inapplicable, and the conclusion we have heretofore expressed and what we have to say hereafter have to do with those cases where picketing ''at'' a place of business is involved.

■ Several considerations have brought us to the conclusion that sections 4 and 6 are not to be given value as mere exceptions to sections 3 and 5, respectively. One reason which seems to us potent, is that to interpret sections 3 and 5 as purposing to create offenses, with sections 4 and 6 as exceptions thereto, would be to present an ordinance which violated the due process provisions of both our state (art. I, sec. 13 ) and federal (Fourteenth Amendment) Constitutions, an interpretation which is to be avoided if another is reasonable. A thoroughly established rule of criminal prac-

tice is the initial step leading to the conclusion that if sections 4 and 6 are to be construed as exceptions to offenses created elsewhere, due process of law is denied. The rule is stated succinctly in *Ex parte Lieritz*, (1913) 166 Cal. 298, 301 [135 Pac. 1129] : "The authorities almost without conflict declare that a complaint, indictment, or information need not allege that an accused comes within exceptions mentioned in the statute upon which the prosecution is founded." We find it more completely set forth in *Ex parte Hornef*, (1908) 154 Cal. 355, 359 [97 Pac. 891], in the following words: "There is practically no conflict in the authorities as to what the general rule is in regard to the necessity of alleging in a complaint, indictment, or information, facts showing that an accused does not come within exceptions or provisos contained in the statute upon which the prosecution is based. The accepted rule is expressed very clearly in *State* v. *Abbey*, 29 Vt. 60 [67 Am. Dec. 754]. It was said there: 'The question is whether the exception is so incorporated with, and becomes a part of the enactment, as to constitute a part of the definition, or description of the offense; for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner. It is the nature of the exception and not its location which determines the question. Neither does the question depend upon any distinction between the words "provided" or "except" as they may be used in the statute. In either case, the only inquiry arises, whether the matter excepted, or that which is contained in the proviso, is so incorporated with, as to become, in the manner above stated, a part of the enacting clause. If it is so incorporated, it shall be negatived, otherwise it is a matter of defense.' The court further said that such exceptions and provisos were to be negatived in the pleading only where they are descriptive of the offense or define it, and that where they afford matter of excuse merely, they are to be relied on in defense." A number of cases to the same effect are cited in our recent decision of *People* v. *Fowler*, (1938) 32 Cal. App. (2d) (Supp.) 737 [84 Pac. (2d) 326, 329], and a multitude of others may be found in 14 California Jurisprudence, 52; 31 C. J. 720, and in the American Digest System, listed under Indictment and Information, key number 111. ██ Implicit in this rule, of course, is another of which it is the corollary: it is not incumbent on the prose-

cution to prove that a defendant does not fall within an exception; that being a matter of defense the burden is on him to make proof of it at his trial. (*People* v. *Ruddick*, (1930) 107 Cal. App. 785, 793 [288 Pac. 45], and cases reviewed at p. 795 et seq.)

As ordinarily presented, there is no fault to find with the application of this rule. If a defendant claims to come within an exception to a state of facts which has been declared in general language to make one a criminal, it does not place an undue burden on him to be required to raise at least a reasonable doubt as to the matter. Indeed, in some cases where the exception is so woven into the definition of the offense that the prosecution must plead it, it need not prove it; it being a negative, more convenient for the defendant to prove, the defendant has that burden. (*People* v. *Boo Doo Hong*, (1898) 122 Cal. 606 [55 Pac. 402].)

Should our section 4, however, be given the effect of an exception to the offense created in section 3, or section 6 be considered as excepting one therein described from the operation of section 5, a person charged under either section 3 or 5 would have an unconscionable burden placed upon him to prove his innocence. All that the People would have to allege would be an act set forth in one or the other of those sections; either that the accused walked to and fro (an act defined in section 1 of the ordinance as picketing) on a public street in a manner calculated to influence a person not to enter a place of business or that he carried a banner on a public street in that manner, and that is all they would have to prove. To escape conviction on either charge, after this *prima facie* showing by the People, a defendant would be compelled to prove without exception all of the following. First, he would have to show that a *bona fide* strike was in progress at the place of business where he was picketing. Without quoting the various definitions in section 1 of the ordinance which become involved, and without discussing and resolving any of the uncertainties in those definitions, with sufficient accuracy for the purposes of the present consideration it suffices to say that, in order to show that a *bona fide* strike was in progress at a particular place of business, a defendant would have to prove: (a) the number of *bona fide* employees, that is, the number of "real" persons employed continuously for thirty days before the strike com-

menced, at the place or places of business at which the strike was taking place, not including in that number, however, any person who had become an employee for the purpose of creating any industrial dispute; (b) That a majority of the *bona fide* employees had by secret ballot voted to strike; (c) that a majority had actually quit work; (d) and that they had quit in order to obtain or resist a change in wages, hours or conditions of their employment after demands made therefor on the employer. He would also have to prove that a majority of those who had quit work at the place where defendant was acting as a picket had "designated in writing" him (the defendant) to so act; that the writing in his possession certifying that a *bona fide* strike was on and that he had been designated as a picket, was signed by one who had been "appointed in writing" by a majority of the striking *bona fide* employees at the place where he was on picket duty; and that at no time when he was a picket were there more than the prescribed number of designated pickets on duty.

Surely the most unimaginative mind, if at all informed about conditions usually prevailing when an industrial dispute has reached the picketing stage, can readily see the inapplicability of any rule of convenience, respecting the defendant's effort to prove the various items enumerated. Since in any large organization many of the facts could be established only by its executive departments, it would usually be difficult, at times impossible, for the defendant to prove the fact that a *bona fide* strike was in progress. Onerous, too, would be his burden of proving the number who had actually quit work, especially as he must prove the motive which entitles them to be counted. Insuperable difficulties may usually be encountered in proving the authenticity of the signatures on the several authorizations which must be in writing. If section 4 is intended to set up an exception to section 3, and also, by the reference in 6, to section 5, all of the items we have just been discussing must be proved by the defendant; if he fails in establishing one of them, he has failed to establish his innocence.

If section 4 was intended to be understood as describing an exception, then we have no hesitancy in saying that the framers of the ordinance attempted to lay the foundations for prosecutions under which those charged as pickets in industrial conflicts would be deprived of their liberties with-

out due process. "Due process", is not a yard stock of definite value; it has been said to be "merely an embodiment of the English sporting idea of fair play". Measured by the conception of due process gained from such cases as *Roller* v. *Holly,* (1899) 176 U. S. 398 [20 Sup. Ct. 410, 44 L. Ed. 520, 524], *Western & A. R. R. Co.* v. *Henderson,* (1929) 279 U. S. 639 [49 Sup. Ct. 445, 73 L. Ed. 884], and *Morrison* v. *California,* (1934) 291 U. S. 82 [54 Sup. Ct. 281, 78 L. Ed. 664], none of them on all fours with our case, but each illuminating the field of our problem, a procedure that would place on a defendant the very weighty burden of proving his innocence which this ordinance would place if it was meant to have sections 4 and 6 operate as exceptions, must be regarded as a denial of due process.

If in answer to what we have said the argument be advanced that the voters of Los Angeles city had a right to prohibit picketing for the purposes mentioned in section 3, and to prohibit the display of banners for the same purposes, and therefore the privilege of escaping punishment for violating the ordinance by being permitted to prove that all the facts required by section 4, were present, is an act of grace extended by the sovereign, and not a burden, we have this reply: even if we should grant that the city had a right to prohibit picketing or to prohibit the display of banners, such is not the intent of the ordinance. Certainly the voters of Los Angeles were not given to understand that the initiative ordinance presented for their consideration was one prohibiting picketing; rather they were told that it was one regulating picketing. Its title declares its scope: "to regulate picketing and the display of banners; to define the conditions under which picketing and the display of banners may be carried on". It does have prohibitory provisions, however, for the title goes on to say: "to prohibit coercion, threats, intimidation", etc.

With copies of the ordinance, arguments in its favor were submitted to the voters as was authorized by the city charter, section 275. These arguments we may consider to aid us in giving the ordinance its proper construction. (*Cypress Lawn C. Assn.* v. *San Francisco,* (1931) 211 Cal. 387, 391 [295 Pac. 813]; *Beneficial Loan Soc., Ltd.,* v. *Haight,* (1932) 215 Cal. 506, and cases cited at 515 [11 Pac. (2d) 857].) We find there: "Picketing and related practices need regulation.

Unregulated picketing and allied activities are involving civil commotion. . . . Los Angeles is sick and tired of unregulated picketing. . . . Proposition No. 1 (the ordinance before us) forbids: 1. Mass picketing and picketing by outsiders. . . . 4. Picketing where a majority of the employees have not by secret ballot decided to strike. . . . 5. Picketing in connection with strikes that do not involve wages, hours or working conditions. . . . "

It is reasonable to interpret the ordinance in harmony with the words just quoted; that its purpose was not to prohibit picketing, but to regulate it; not to prohibit the display of banners, except under the conditions set forth. In other words, the crimes which the ordinance would create with respect to picketing are these, among others: picketing in greater numbers than prescribed; picketing by those not employees; picketing when there is no *bona fide* strike; picketing when the strike does not involve wages, hours or working conditions; picketing by one not authorized in writing. With respect to the display of banners, the ordinance does not attempt to prohibit all display, as we interpret its provisions, but only to prohibit the display of a banner in excess of the size prescribed or when carried by a person not lawfully acting as a picket. But, it will be noted, to discover the creation of these crimes in the ordinance, section 4 must be added to · section 3, and sections 4 and 6 added to section 5, not read as exceptions to them.

We see no argument which weighs against our conclusion other than the form in which the ordinance was drafted. The form of the ordinance, however, is not conclusive; that which appears to be an exception, set up in a separate section, may prove to be actually a part of the definition of the offense sought to be created. To quote again from *State* v. *Abbey*, (1856) 29 Vt. 60 [67 Am. Dec. 754], as found in *Ex parte Hornef, supra,* 154 Cal. 355, 360: "it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner. It is the nature of the exception, and not its location, which determines the question." A similar expression appears in *Groskins* v. *State,* (1931) 52 Okl. Cr. 197 [4 Pac. (2d) 117, 119], where it is said, after giving the general rule that the exception need not be negatived, but is a matter of defense: "There are exceptions to this rule,

where the nature of the exemption constitutes a part of the definition or description of the offense, although it is not in the enacting clause," citing cases. In *Baker* v. *State*, (1937) 132 Tex. Cr. R. 527 [106 S. W. (2d) 308], at page 311, we find: "We feel impelled to say that if there be possibly an exception to the rule above mentioned, it must be when the exception or omission . . . is of the very gist of the offense, and then same would have to be negatived in the indictment, no matter where its location in the statute, and the Legislature in such latter case would be powerless to enact a statute making it unnecessary to negative such an exception, and this, as stated, whether such exception be in the article defining the offense or be in a separate article. In other words, if the thing forbidden by the particular statute under consideration could not be proved, or the case could not be made out without proof of the so-called exception or omission, then said exception would be a necessary element of the offense, and its existence should be negatived in the indictment and find support in proof."

The form of the ordinance does not make impossible, then, our conclusion. While the manner in which the ordinance is drafted constitutes the strongest argument against our conclusion, we find in further details of its drafting support for our interpretation. That is to say, while the introductory paragraph of section 4 might well be said to be cast in the form of an exception, much of the content of the section is plainly in the language used in creating crimes. This is unmistakably true of the last sentence of subsection (a) of section 4, which by no stretch of interpretation can be construed as anything but the creation of a specific offense. It is true, indeed, of all of that portion of section 4 following the opening paragraph, except the first sentence of subsection (a).

To avoid a construction which would offend our state and federal Constitutions, but rather to adopt one in harmony with the arguments submitted to the voters, and which is reasonable, giving effect to the obvious purposes of the ordinance, we conclude that the complaints involved in these cases fail to charge any public offense, for they fail to charge that. any of the defendants committed an act in violation of any of the provisions of either section 4 or 6. The result of our conclusion may be of only temporary advantage to the de-

fendants; if they did picket or carry banners contrary to the provisions of the ordinance, they may yet have charges preferred against them and be brought to judgment. But if they, or defendants in other cases, are charged with a violation of the ordinance, so long as our conclusion is observed, they will have to be charged with commiting an act contrary to the regulations thrown around picketing.

The judgments are reversed with instructions to the trial court to dismiss the complaints.

Shaw, P. J., concurred.

SCHAUER, J., Concurring.—I concur in the judgment holding that the complaints do not state facts sufficient to constitute any public offense.

Without intimating any opinion as to the validity or invalidity of any part of the ordinance when sections 3 and 5 are interpreted as complemented, respectively, by section 4 and by sections 4 and 6, I agree, generally, with the propositions of law stated in the foregoing opinion but think, however, that there is no fundamentally sound basis for distinguishing this case, on the question of pleading, from that of *People* v. *Fowler*, (1938) 32 Cal. App. (2d) (Supp.) 737 [84 Pac. (2d) 326], and that the latter should be avowedly overruled, not as to the general propositions of law therein enunciated, as such, but in their application to the facts of that case.