[Crim. No. 765. Third Appellate District—October 1, 1924.]

## THE PEOPLE, Respondent, v. S. PAGNI, Appellant.

[1] Criminal Law — Wright Act — Volstead Act — Dual Punishment—Statutory Construction.—While the penal provisions of the Wright Act were adopted, by reference, from the Volstead Act, the two acts represent different and distinct sovereignties; and the conviction of a person for an act in violation of the provisions of a state prohibition statute will not operate to bar his prosecution, conviction, and punishment in and by the federal courts under the Volstead Act for the commission of the identical act for which he has suffered conviction and punishment under the state law—there being no provision in the Volstead Act or any other federal statute providing for a bar in such cases.

[2] Id. — Construction of Wright Act — Independence of Federal Statutes. — The Wright Act is to be regarded as though it had been enacted by our legislature without regard to or independently of any consideration of the Volstead Act, and its language and all its provisions are to be viewed and construed without reference to the source from which they were taken—in other words, construed as purely a state statute and not as having anything to do or any connection with the act of Congress whose penal provisions it has adopted.

[3] Id.—Increased Punishment—Legislative Intent.—The legislature of this state, when providing for increased punishment for repeated violations of the Wright Act, could have had in mind such prior convictions only as were obtained in the state courts under the Wright Act.

[4] Id. — Aggravated Punishment — Prior Conviction in Federal Court—Constitutional Legislative Authority.—While it may be that it is within the constitutional competency of the legislature to authorize, as in aggravation of the punishment in cases arising in the state courts under the Wright Act, the setting up of prior convictions in the federal courts under the Volstead Act, until it is so authorized such practice in such cases cannot legally be sanctioned or upheld; and there is no law in this state authorizing such a course in cases arising under the prohibition statutes.

[5] Id. — Prior Conviction in Federal Court — Section 668, Penal Code, Inapplicable.—Section 668 of the Penal Code, which provides that "every person who has been convicted in any other state, government or country, of an offense which, if committed within this state, would be punishable for any subsequent crime committed within this state in the manner prescribed" by sections

666 and 667 of said code, has no application to a conviction in a state court of a violation of the Wright Act, following a prior conviction in a federal court of a violation of the Volstead Act, as said section 668 expressly limits its application to cases of conviction of crimes which would amount to a felony if committed in this state, while the offenses denounced by both the Wright Act and the Volstead Act are misdemeanors.

[6] ID.—CONVICTION PRIOR TO WRIGHT ACT—EX POST FACTO LEGISLATION.—In a prosecution for a violation of the Wright Act, to permit the setting up of a conviction had against the defendant in the federal court prior to the date the Wright Act became effective, for the purpose of increasing his punishment beyond what otherwise it could be, would impart to the provisions of the Wright Act as to prior convictions an *ex post facto* operation, contrary to the mandate of the federal constitution, as well as that of our state organic law.

[7] ID. — LAWFUL ACQUISITION OF INTOXICATING LIQUOR — BURDEN OF PROOF—ERRONEOUS INSTRUCTION.—In a prosecution for a violation of the Wright Act, an instruction, substantially in the language of section 33 of the Volstead Act, that the burden is upon the accused to show that the intoxicating liquor with the unlawful possession of which he is charged was lawfully acquired, possessed, and used by him, should not be given.

[8] ID. — RULES OF STATUTORY CONSTRUCTION — FUNCTION OF COURT AND JURY.—Rules of statutory construction are for the guidance of the courts in construing or applying the provisions of statutory enactments, while the sole function of the jury is to consider the facts and formulate a judgment with respect thereto under the guidance of appropriate statements of the law by the court; therefore, in a prosecution for a violation of the Wright Act, the jury should not be instructed that all the provisions of such act "shall be liberally construed to the end that the use of intoxicating liquors as a beverage may be prevented."

[9] ID. — DEFENDANT AS WITNESS — STATEMENTS OF TRIAL COURT — PREJUDICIAL MISCONDUCT.—In this prosecution for a violation of the Wright Act, the trial court was guilty of misconduct, prejudicial to the rights of the defendant, where, after the defendant (who had taken the stand in his own behalf) had testified in chief and had been asked several questions on cross-examination by the district attorney, the court, addressing the accused, interrupted as follows: "I am going to call this witness' attention . . . to the fact that, in these liquor cases, we have had a lot of testimony here in various times that is very questionable, and the court is,

9. Propriety of comment by court to effect that perjury has been committed, note, **Ann. Cas.** 1917B, 128. See, also, 26 **R. C. L.** 1027.

hereafter, when some of this testimony comes in, with the court to say whether or not it is true, the court is going to direct the District Attorney to submit that testimony to the Grand Jury, with the purpose or the view, at least, of obtaining indictments for perjury. . . . And I am going to tell you that now in advance, so that you will understand . . . what to expect."

(1) 16 C. J., p. 282, sec. 482; 33 C. J., p. 577, sec. 193 (Anno.). (2) 33 C. J., p. 577, sec. 482 (Anno.).  (3) 33 C. J., p. 799, sec. 558. (4) 33 C. J., p. 799, sec. 558.  (5) 16 C. J., p. 1342, sec. 3156 (Anno.); 33 C. J., p. 618, sec. 251, p. 799, sec. 558.  (6) 12 C. J., p. 1107, sec. 817; 33 C. J., p. 799, sec. 558.  (7) 33 C. J., p. 744, sec. 480 (Anno.).  (8) 16 C. J., p. 921, sec. 2272, p. 965, sec. 2359.  (9) 17 C. J., p. 297, sec. 3637 (Anno.).

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Richard P. Talbot and Clifford A. Russell for Appellant.

U. S. Webb, Attorney-General, and C. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted in the superior court of Sacramento County of the crime of having in his possession a certain quantity of intoxicating liquor for beverage and not for sacramental or medicinal purposes, and he appeals from the judgment of conviction and the order denying his motion for a new trial.

The information, in addition to charging that the accused, in the month of June, 1923, had in his possession intoxicating liquor of the interdicted alcoholic content, set up two alleged prior convictions of the defendant of a like charge, as follows, to wit: 1. That the said Pagni, before the commission of the offense charged in the information was, on the eighteenth day of May, 1923, in the police court, in the city of Sacramento, county of Sacramento, state of California, convicted of having in his possession intoxicating liquor, "suitable for beverage purposes" and of contraband alcoholic content; 2. That the defendant, prior to the "commission of the offense charged in this information, was, on the tenth day of October, 1922, in the United States Dis-

trict Court, Northern Division," convicted of unlawfully possessing intoxicating liquor of the proscribed alcoholic content.

Upon his arraignment the defendant admitted having suffered the two previous convictions charged but interposed a plea of not guilty to the charge of possession as alleged in the information.

There are several assignments of error, of which the first presented and discussed in the briefs involves the contention that the second prior conviction set forth in the information is not, as applied to a prosecution under the state law, known as the Wright Act, for a violation of its provisions, "a prior conviction." In other words, it is the claim that a conviction in the federal court under the Volstead law, which is a federal statute, cannot be set up as in aggravation of punishment against one subsequently prosecuted for committing a like prohibited act under the state law. It is further contended that, even if it were true as a legal proposition that a conviction in a federal court of an offense made so by an act of Congress could be pleaded as in aggravation of the punishment of one who, subsequent to such conviction, is charged with and prosecuted for a like offense under a state law, it was improper to charge in the information here the alleged second previous conviction for the reason that the offense of which the defendant was convicted was committed by the defendant and his conviction thereof took place before the state law (the so-called Wright Act) went into effect.

The points thus made are of vital importance in this case in view of the provisions of section 29 of the so-called Wright Act (Stats. 1921, p. 79), adopted by our legislature into said act from the so-called Volstead Act (U. S. Stats. at Large, vol. 41, pt. 1, p. 305, at 316), which was enacted by the Congress of the United States under the authority and for the purpose of enforcing the provisions of the eighteenth amendment to the federal constitution. That section reads as follows: "Any person . . . who violates any of the provisions of this title, for which offense a special penalty is not prescribed, shall be fined for a first offense not more than $500.00; for a second offense not less than $100.00 nor more than $1000.00, or be imprisoned not more

69 Cal. App.—7

than ninety days; for any subsequent offense he shall be fined not less than $500.00 and be imprisoned not less than three months nor more than two years.''

It will be seen that for a third offense under the Wright Act the offender may be given a much greater punishment than where the offense has been committed for the first or second time. While the court is limited in the punishment of the offender for the first offense to the imposition of a fine not to exceed five hundred dollars, and for a second offense to a fine of not less than one hundred dollars nor more than one thousand dollars, or imprisonment not to exceed ninety days, for the third offense of which he may be convicted, the punishment may be by fine of not less than five hundred dollars or imprisonment not less than three months nor more than two years.

**[1]** 1. While it is true that the penal provisions of the Wright Act were adopted, by reference, from the Volstead Act, the former is in the strictest sense a state law. The two acts represent different and distinct sovereignties, and it has been held that the conviction of a person for an act in violation of the provisions of a state prohibition statute will not operate to bar his prosecution, conviction of and punishment in and by the federal courts under the Volstead law for the commission of the identical act for which he has suffered conviction and punishment under the state law, there being no special provision in the Volstead or any other federal statute providing for a bar in such cases. This rule is declared in numerous cases from both federal and state jurisdictions, but it is enough to refer to the case of *United States* v. *Lanza*, 260 U. S. 377 [60 L. Ed. 314, 43 Sup. Ct. Rep. 141], decided in the year 1922. Section 29 of the Volstead Act, it will be noted, declares that any of the provisions of "this title," etc., which, of course, means anyone who violates the provisions of "this law." As adopted into and made a part of the Wright Act, that language obviously bears the same meaning, and refers to the latter act. **[2]** Indeed, the Wright Act is to be regarded as though it had been enacted by our legislature without regard to or independently of any consideration of the Volstead Act, and it is, therefore, too clear for argument that its language and all its provisions are to be viewed and construed without

reference to the source from which they were taken—in other words, construed as purely a state statute and not as having anything to do or any connection with the act of Congress whose penal provisions it has adopted. These propositions follow from the impregnable premise that there does not exist a relation of interdependence between the two sovereignties, the federal and the state, with respect to the matter of providing for the punishment of crime against their respective sovereignties, each in that particular being entirely independent of the other and capable, according to its own plan, of protecting its own sovereignty against transgressors of public law or of punishing those that may transgress it. It surely would never be maintained that where a person has been convicted in a federal court of the unlawful possession of intoxicating liquors or any other act prohibited by the Volstead Act, such conviction could be pleaded as in aggravation of the punishment in a state court in a prosecution therein of such person for the same act. Moreover, as may be done in the state courts under the Wright Act, so under the Volstead Act as enforced in the federal courts, prior convictions may be set up to warrant increased punishments for persistent disobedience of the mandates of said law, and, if federal court prior convictions may be pleaded in state courts, this harsh (indeed, in many instances unjust) result might and probably would follow: the conviction of a person in both the federal and the state courts for the same unlawful act, with precisely the same prior convictions pleaded against him in each instance. It is difficult for us to reconcile ourselves to the belief that, when enacting the Volstead and the Wright Act, either the Congress or the legislature intended or contemplated so drastic a result from the enforcement of those measures.
[3] But be that as it may, it is perfectly clear for the other reasons to which we have given vent that the legislature of this state, when providing for increased punishment for repeated violations of the Wright Act, could have had in mind such prior convictions only as were obtained in the state courts under the Wright Act. Certainly no one would say that, as to misdemeanors, the provision as to prior convictions was intended to include such convictions had in other states. The assumption that it was intended to em-

brace within its purview such convictions under a federal statute in the federal courts would be no less unreasonable or untenable. [4] It may be that it is within the constitutional competency of the legislature of a state to authorize, as in aggravation of the punishment in cases arising in the state courts under the Wright Act, the setting up of prior convictions in the federal courts under the Volstead Act, but until it is so authorized such practice in such cases cannot legally be sanctioned or upheld. There is no law in this state authorizing such a course in cases arising under the prohibition statutes. [5] It is true that section 668 of the Penal Code provides that "every person who has been convicted in any other state, government or country, of an offense which, if committed within this state, would be punishable by the laws of this state by imprisonment in the state prison, is punishable for any subsequent crime committed within this state in the manner prescribed" by sections 666 and 667 of said code. That section, however, has no application here, since it expressly limits its application to cases of conviction in any other state or government of crimes which would amount to a felony if committed in this state, while the offenses denounced by both the Volstead and the Wright Act are misdemeanors. (*Ex parte Humphrey,* 64 Cal. App. 572 [222 Pac. 366].)

2. In view of the conclusion arrived at as to the above-considered objection to the setting up against the accused of the federal court conviction as in enhancement of his punishment, it is not absolutely necessary that the second ground of objection to that course should herein be examined and determined. Indeed, there will not likely arise any cases growing out of violations of the Wright Act in the future in which such a ground of objection will exist. But it is conceived not to be improper to state herein that said ground of objection seems to be sound in principle. We have found no cases directly in point. This court will take judicial notice of these facts (sec. 1875, Code Civ. Proc.): That the Wright Act was passed by the legislature in the month of May, 1921, and approved by the governor on the 7th of said month (Stats. 1921, p. 79); that it was delayed from going into effect by the referendum provisions of section 1 of article VI of the constitution, petition there-

for, with the required signatures, having been filed with the Secretary of State; that the act under the referendum petition was voted upon and approved by a majority of the people at the general election held throughout the state on the seventh day of November, 1922; that the act did not become operative or go into effect until five days after the date of the official declaration of the vote by the Secretary of State (Const., sec. 1, art. VI), which declaration was made on the sixteenth day of December, 1922. It will thus be noted that the prior conviction in the federal court, alleged in the information here, was obtained over two months before the Wright law went into effect. In other words, the specific offense with which the defendant is charged in the information did not exist when the federal prior conviction was had. **[6]** It follows, therefore, that to permit the setting up of said prior conviction against the defendant for the purpose of increasing his punishment beyond what otherwise it could be would impart to the provisions of the Wright Act as to prior convictions, so far as is concerned the present case, an *ex post facto* operation, contrary to the strict mandate of the federal constitution (U. S. Const., sec. 1, art. IX), as well as that of our state organic law. (Sec. 16, art. I. See, also, *Ex parte Medley*, 134 U. S. 160 [33 L. Ed. 835, 10 Sup. Ct. Rep. 384, see, also, Rose's U. S. Notes] ; *Cummings* v. *Missouri*, 4 Wall. 277 [18 L. Ed. 356] ; note, 37 Am. St. Rep. 582; 3 Ann. Cas. 77.) The cases cited by the attorney-general as supporting the position that, notwithstanding that the specific crime with which the information charged the accused did not exist as an offense against the sovereignty of the state at the time of the conviction in the federal court, said conviction may, nevertheless, legally be set up against him as in aggravation of his punishment, presented an entirely different situation from that presented here. In truth, those cases do not touch the question submitted here. (See *Moore* v. *State*, 159 U. S. 676 [40 L. Ed. 301, 16 Sup. Ct. Rep. 179, see, also, Rose's U. S. Notes] ; *People* v. *Coleman*, 145 Cal. 609 [79 Pac. 283; *People* v. *Stanley*, 47 Cal. 115 [17 Am. Rep. 401] ; *People* v. *King*, 64 Cal. 341 [30 Pac. 1028].) The important point decided by those cases is that increased punishment authorized in certain cases by the code by reason of an offense like that with which a defendant is charged is not a second or an

additional punishment for the offense first committed. This ruling is fortified by the soundest reason, and, of course, is not subject to unfriendly criticism or just animadversion. The case of *Ex parte Gutierrez*, 45 Cal. 429, involves the consideration of a question more nearly like the one now before us than any discussed and disposed of in the cases above named. There the defendant, in the year 1872, was convicted of the crime of petit larceny, a misdemeanor. Thereafter the Penal Code, containing, among others, a section providing that anyone convicted a second time of the crime of petit larceny should be subject to a heavier penalty than that prescribed for the crime itself went into effect. Subsequently, again the defendant was charged with petit larceny and, under the authority of the code section referred to, his conviction of a like offense in 1872 was set up against him as in aggravation of his punishment for the crime with which he was charged. It was contended in that case on behalf of the prisoner that to allow the first conviction to stand as in enhancement of his punishment would give an *ex post facto* effect to the code section authorizing such a course. Upon irrefutable reasoning, the supreme court denied the soundness of the contention and rejected it. The theory upon which the first conviction was allowed to stand for the purpose stated and the reasons supporting it need not be repeated herein. It is sufficient to say that there is a marked distinction between that case and this. In the former, the crime with which the defendant was charged was an offense against the state prior to the enactment of the Penal Code containing the provision as to prior convictions. Here, as has been hereinabove shown, the offense with which the defendant is charged had no existence when the federal conviction took place.

The above points were raised on the demurrer to the information. There are other grounds of objection to that pleading, but to those there is absolutely no merit.

If what we have considered above was all that there was against the judgment and the order, it would be necessary only to order a remission of the case to the court below for the rendition and pronouncement of a proper judgment—a judgment founded on the conviction of the accused of the offense charged, with the prior conviction of a like offense in the police court of the city of Sacramento, and

that obtained in the federal court eliminated. For another reason, however, it is found necessary to remand the case for a new trial. There are a few assignments involving attacks upon certain instructions given to the jury by the court which it is well enough to notice before we proceed with the consideration of the assignment which, we are convinced, calls for a reversal of the judgment and the order.

[7] In an instruction given by the court substantially in the language of section 33 of the Volstead Act, the court stated that, in prosecutions such as the one we have here under the Wright Act, the burden was upon the accused to show that the intoxicating liquor with the unlawful possession of which he is charged was lawfully acquired, possessed, and used by him. Precisely the same instruction was given in the cases of *People* v. *Mattos,* 67 Cal. App. 346 [227 Pac. 974]; *People* v. *Silva,* 67 Cal. App. 351 [227 Pac. 976], and *People* v. *Arnarez,* 68 Cal. App. 645 [230 Pac. 193], and therein it was held that, inasmuch as the Wright Act adopted none other than the penal provisions of the Volstead Act, and as section 33 of the latter act does not involve any of the penal provisions thereof, and, further, as the part of the instruction complained of here merely declares a rule of evidence, said instruction should not have been given. The conclusion reached in the cases named as to the impropriety of giving such an instruction in cases such as were considered therein and like the present is beyond impeachment.

[8] In another instruction the following appears and was read to the jury: "All the provisions of this act shall be liberally construed to the end that the use of intoxicating liquors as a beverage may be prevented." This language merely involves the statement of a rule of statutory construction, as applied to the prohibition acts. Juries are not concerned with rules of statutory construction. These are for the guidance of the courts in construing or applying the provisions of statutory enactments, while the sole function of the jury is to consider the facts and formulate a judgment with respect thereto under the guidance of appropriate statements of the law by the court. Such an instruction

might lead a jury of laymen to assume that, in passing upon the question of the guilt or innocence of persons charged with violating the provisions of the prohibition statutes, the degree of proof that is required in all criminal cases to establish guilt is not in all its strictness to be applied or observed. We are not to be understood as holding that the errors committed in the instructions above considered are of themselves of sufficient gravity to compel a reversal of the case. This question, if passed on, would have to be considered and determined by the light of the record as a whole. Of them we have written principally for the reason that it is desirable that the trial courts should be impressed with the understanding that the one first noticed was not pertinent to a case of this character and that the last considered not pertinent to any criminal case, and that the giving of them in some cases might, by reason of the peculiar circumstances thereof, require a reversal.

[9] We now reach the consideration of an episode occurring during the course of the trial which imperatively demands a reversal. After the defendant, taking the witness-stand in his own behalf, had testified in chief, and had been asked several questions on cross-examination by the district attorney, the court, addressing the accused, interrupted as follows: "I am going to call this witness' attention to—first now, I am going to call your attention to the fact that, in these liquor cases, we have had a lot of testimony here in various times that is very questionable, and the court is, hereafter, when some of this testimony comes in, with the court to say whether or not it is true, the court is going to direct the District Attorney to submit that testimony to the Grand Jury, with the purpose or the view, at least, of obtaining indictments for perjury." Witness: "Yes." The Court, proceeding: "And I am going to tell you that now in advance, so that you will understand"—witness interposing, "Yes"— Court continuing, "what to expect." The implication plainly carried by the court's remarks was that, other witnesses and defendants in liquor cases tried before that court in the past having committed perjury in their attempt to fortify pleas of not guilty, the defendant would be disposed to do likewise or perhaps had, on his direct ex-

amination, given false testimony and would, unless warned in the manner adopted by the court, remain faithful on cross-examination to what he (the witness) knew to be an untruthful story. At any rate, the jury could well have understood the remarks to mean that all ''bootleggers,'' so to speak, when undergoing trial for infractions of the prohibition statutes, would commit perjury, if necessary to escape conviction, and that the defendant here was within the censures involved in that statement, or that he, too, would not be restrained by his conscience to lie under oath to accomplish his acquittal. There cannot be the slightest doubt that by the remarks of the court the defendant was put in a most unfavorable light before the jury. Indeed, it is plainly manifest that the effect of said remarks was to deny to the defendant that fair trial which is guaranteed by the laws of the land to him and all others charged with crime and tried therefor. And particularly in this case must such remarks be held to have been seriously detrimental to the accused; for, while the testimony produced by the People is sufficient to support the verdict, the case, as made by the People, is not, evidently, overwhelmingly strong against the accused. The police officers who raided his place and arrested the defendant found, among a large number of empty bottles, one bottle which contained little more than a trace of intoxicating liquor. The defendant, in the previous month of May, was arrested and charged with having in his possession intoxicating liquor and was tried for, convicted of, and punished for the offense. At the trial of the instant case he testified on his direct examination that the liquid in the bottle referred to was vinegar and was in his possession at the time the former raid of his place and his arrest were made and had remained there untouched until the arrest on the present charge. It was, of course, for the jury to believe or disbelieve that story, but it should have been left to be by them considered in a state of mind wholly free from any bias or prejudice against it other than that generated in their minds by the manner in which the defendant himself told it. The remarks of the court could not have left the jury in that state of mind with respect to the defendant's testimony.

The judgment and the order are reversed, and the cause remanded for a new trial, with the allegation as to the prior conviction in the federal court stricken and eliminated from the information.

Plummer, J., and Finch, P. J., concurred.