[Crim. No. 1012. Third Appellate District.—January 25, 1928.]

THE PEOPLE, Respondent, v. C. C. WOOD, Appellant.

J. T. Fraser and H. L. Ford for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was charged by information filed in the superior court of Humboldt County with the crime of wilfully, unlawfully, and feloniously having in his possession and under his control, on or about the twenty-fifth day of October, 1927, in said county, "a still, designed, used and intended for use in the manufacture of intoxicating liquor for beverage purposes." Upon his arraignment upon said charge, the defendant entered a plea of guilty thereto, waived the statutory time for the pronouncement of judgment, and was thereupon sentenced by the court to pay a fine of one thousand dollars and to be imprisoned in the state prison.

Notwithstanding the foregoing proceedings or the fact that judgment was passed upon him upon his plea of guilty to the information, the defendant has taken this appeal from said judgment. Counsel for the defendant, however, in their brief introduce their argument in support of the appeal

by the statement that the defendant employed them to prosecute this appeal for the reason that he and others, including counsel, entertain serious doubt as to the constitutionality of the act under which the defendant was proceeded against.

The act upon the provisions of which the information filed against the defendant is based was passed by the legislature of 1927 (Stats. 1927, p. 497), and went into effect on July 29th of that year. The first section of said act reads as follows:

"Any person whether acting in his own behalf or as the agent, servant, officer or employee of any person, firm, association or corporation, who shall be the owner of or have any interest in or who shall operate or cause to be operated or knowingly have in his possession or control, any still, still worm, still cap, still condenser or stilling device of any kind, designed, used or intended for use in the manufacture or production of intoxicating liquor for beverage purposes, shall be guilty of a felony and upon conviction thereof shall be punished by a fine of not less than one thousand dollars ($1,000) nor more than five thousand dollars ($5,000), and by imprisonment in the state prison for not less than one year nor more than five years."

The penalty fixed by said statute is heavier than the penalty prescribed for the same act by the National Prohibition Law.

It is claimed by counsel for the defendant that the foregoing act involves an attempted amendment of the state Prohibition Act, commonly known as the Wright Act (Stats. 1921, p. 79), and that, inasmuch as said act was, after its enactment by the legislature, submitted to the People for approval or rejection, under the referendum reservation contained in article IV, section 1, of the constitution, and approved by the People at the general election in November, 1922, it thereupon in effect became and that it involves direct legislation by the People themselves, and, therefore, not subject to amendment by the legislature. This contention is obviously unsound. In the first place, it is to be noted that the act does not purport to be an amendment of the state Prohibition Act, effective in due time after its approval by the People in November, 1922, but, while having reference to or bearing direct connection with the subject matter and the object of said act, and effecting a

change in the penalty for the act therein described, it is, *as legislation,* entirely independent of and separate from said act; secondly, notwithstanding that an act of the legislature may, under the power of referendum reserved by the People in their constitution to themselves, be referred to the People after its passage by the legislature and approval by the Governor for their approval or rejection, such act is no less an act of the legislature than if it were never so submitted. In other words, an act so passed and referred does not constitute the ''direct legislation'' which the People, by article IV, section 1, of the constitution, have reserved to themselves the power and right to inaugurate. But said section of the constitution itself directly answers the proposition. Among other things, it provides: ''No act, law or amendment to the Constitution, initiated or adopted by the people, shall be subject to the veto power of the governor, and no act, law or amendment to the Constitution, adopted by the people at the polls under the initiative provisions of this section, shall be amended or repealed, except by a vote of the electors, unless otherwise provided in said initiative measure; *but acts and laws adopted by the people under the referendum provisions of this section may be amended by the legislature at any subsequent session thereof.''*

 But it is further contended that the statute is invalid because it imposes a heavier penalty for the act denounced in the section of the statute under which the defendant was proceeded against than is authorized for a like act by the so-called Volstead Act (27 U. S. C. A.), passed by Congress for the purpose of enforcing the Eighteenth Amendment to the national constitution; that the Wright or state Prohibition Act, so far as penalties are concerned, is, by its own express terms, the congressional act referred to, and that it follows, therefore, that it is incompetent for the legislature of the state to prescribe any different penalties for the violation of the state prohibition law from those which the Volstead Act prescribes or the Congress may hereafter prescribe. This contention seems to be founded on the following language of section 3 of the Wright Act: ''Whenever congress shall amend or repeal the Volstead Act, or enact any other law to enforce the eighteenth amendment to the constitution of the United States,

then the provisions of sections one and two of this act shall apply thereto.''

The courts of this as well as of other jurisdictions, state and federal, have time and again declared, as unquestionably they were required to declare, in view of the established proposition that the federal and state governments involve and exercise wholly and entirely separate and independent sovereignties, that the Congress has no power to control or regulate the exercise or administration of the state's power of police or its local internal affairs. Indeed, even in the matter of the enforcement of the Eighteenth Amendment of the federal constitution, the general government may not interfere with the manner in which, by virtue of its police power, the state may elect to proceed. As is said by Presiding Justice Finch, in *In re Volpi*, 53 Cal. App. 229 [199 Pac. 1090] : ''The police power of the state, therefore, is paramount where it does not authorize what the national act prohibits, and through its inherent reserve power it has the right to legislate in such manner (referring to the ordinance in that case under attack). The state may prohibit, but it may not authorize.'' ·

Again, it is said in the Volpi case, citing *Commonwealth v. Nickerson*, 238 Mass. 281 [10 A. L. R. 1568, 128 N. E. 273] : ''Legislation by the states need not be identical with that of Congress. . . . The states need not denounce every act committed within their boundaries which is included within the inhibition of the Volstead Act, nor provide the same penalties therefor. It is conceivable that a state may forbid under penalty acts not prohibited by the act of Congress.''

In *People* v. *Pagni,* 69 Cal. App. 94, 98, 99 [230 Pac. 1001], it is said : ''The Wright Act is to be regarded as though it had been enacted by our legislature without regard to or independently of any consideration of the Volstead Act, and it is, therefore, too clear for argument that its language and all its provisions are to be viewed and construed without reference to the source from which they were taken—in other words, construed as purely a state statute and not as having anything to do or any connection with the act of Congress whose penal provisions it has adopted. These propositions follow from the impregnable premise that there does not exist a relation of interdependence between the two

sovereignties, the federal and the state, with respect to the matter of providing for the punishment of crime against their respective sovereignties, each in that particular being entirely independent of the other and capable, according to its own plan, of protecting its own sovereignty against transgressors of public law or of punishing those that may transgress it.''

Whether the above-quoted provision of section 3 of the Wright Act is or is not valid need not be considered here; but it is not improper to say that if it should be held to be beyond the constitutional power of the legislature to enact or amend our statutory laws by the method assumed by said section, the elimination of said provision from the Wright Act, by reason of its invalidity on that ground, would not have the effect of invalidating the other and more important provisions of said act, since there is no interdependence between section 3 and the other sections thereof. In other words, the provision of section 3 is ''subsidiary to the main purpose of the act and not essential to its validity. . . . It was not the controlling consideration prompting the enactment of the law.'' (*People* v. *Capelli*, 55 Cal. App. 461, 467 [203 Pac. 837, 839].)

The case which counsel seem to rely upon (*In re Mingo,* 190 Cal. 769 [214 Pac. 850]) is not in point here.

There is no merit in the appeal from any viewpoint.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 22, 1928.

All the Justices present concurred.