[Sup. Ct. No. 36908. Appellate Department, Superior Court, Los Angeles County.—January 31, 1930.]

## THE PEOPLE, Respondent, v. CLARA RUDDICK, Appellant.

(1 Cal. Supp. 32.)

[Sup. Ct. No. 37187. Appellate Department, Superior Court, Los Angeles County.—January 31, 1930.]

## THE PEOPLE, Respondent, v. ROY E. JONES, Appellant.

[Cr. A. No. 66. Appellate Department, Superior Court, Los Angeles County.—January 31, 1930.]

## THE PEOPLE, Respondent, v. MRS. KATE COYNE, Appellant.

[Cr. A. No. 138. Appellate Department, Superior Court, Los Angeles County, January 31, 1930.]

## THE PEOPLE, Respondent, v. WILLIAM PAAR, Appellant.

MacDonald & Thompson and L. D. Carter for Appellants.

Lloyd S. Nix, City Prosecutor, and F. W. Fellows and Joe W. Matherly, Deputies City Prosecutor, for Respondent.

BISHOP, J.—As the above cases all present problems embracing the question: ''Is proof merely of the possession of intoxicating liquor sufficient to sustain a conviction under the Wright Act?'' we have grouped them together for consideration. In each the defendant was charged with unlawful possession, found guilty, sentenced and has appealed.

The liquor in the Ruddick case, a quarter of a bottle less than a quart in size, was found in the kitchen cabinet of a flat occupied as a dwelling by defendant and her husband.

At Jones' residence a gallon of whisky was found underneath a drawer in the china cabinet of the dining-room.

Kate Coyne was found to have a partly filled pint bottle of whisky under her shoulder as she lay on a bed in a hotel room.

In a cabinet situated in the dining-room of defendant Paar's residence there were found sixteen bottles of assorted liquors.

It will appear, as we review the cases, that three questions are involved in the situation before us. Is the mere possession, that is, possession without intent to sell or transport, a public offense? Is it necessary to set forth an unlawful purpose or to negative the exceptions in the complaint or indictment? Is it incumbent on the People to prove that the case does not fall within the exceptions, or is the defendant to take the burden of proceeding with the proof that his possession is within the exceptions?

Without attempting at this point to separate the penal provisions of the National Prohibition Act which our state has adopted from those which are procedural or rules of evidence and are not adopted, the following sections, all in title II, are pertinent to our investigation.

The first half of section 3 reads:

''No person shall on or after the date when the eighteenth amendment to the Constitution of the United States goes into effect, manufacture, sell, . . . furnish, or possess any

intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented.''

Section 25 of the same title opens with this sentence:

''It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property.''

A purely procedural provision is placed in section 32:

'' . . . It shall not be necessary in any . . . indictment to give the name of the purchaser or to include any defensive negative averments.''

In the following section (33) we find:

''After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor, shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title. Every person legally permitted under this title to have liquor shall report to the commissioner within eighteen days after the date when the eighteenth amendment of the Constitution of the United States goes into effect the kind and amount of intoxicating liquors in his possession. But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his *bona fide* guests when entertained by him therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used.''

It is unnecessary to list at this time, but only to note, that there are other conditions, described in title II of the Volstead Act, under which possession is declared to be lawful.

Addressing ourselves to the question: ''Does the Volstead Act prohibit possession not shown to be for an unlawful purpose?'' we find the negative answer given by appellants not without its support in the federal courts. There are

three reported cases from the western district of Pennsylvania upholding the position they take: *United States* v. *Illig*, (1920) 288 Fed. 939; *United States* v. *Berger*, (1925) 9 Fed. (2d) 167; *Petition of Shoemaker*, (1925) 9 Fed. (2d) 170. In the southern district of Florida, too, a strong affirmance of appellant's contention is given in *United States* v. *Dowling*, (1922) 278 Fed. 630. The voice of the Circuit Court of Appeals in the Fifth Circuit probably must be added to these. (See *Hilt* v. *United States*, (1922) 279 Fed. 421.)

The great weight of federal authority, however, supports the conclusion that the Congress could and did make mere possession of intoxicating liquor unlawful. The earliest case on the question coming to our attention is *United States* v. *Murphy*, (1920) 264 Fed. 842, from the eastern district of New York. The government had applied for permission to file an information charging the defendant with possession of liquor in violation of section 3, title II, of the Volstead Act. The question at issue and the answer given by the court appear in the following quotation:

"Defendant insists that nothing therein contained can be taken to indicate that the mere possession of intoxicating liquor is prohibited, and that Congress . . . could not declare any act to be a crime which was not forbidden by the amendment (18th) itself. . . .

"The amendment in question was adopted in order that the use of intoxicating liquor as a beverage might come to an end. It was within the power of Congress to adopt any reasonable means calculated to bring about the desired result. Limiting possession, as the act has done, will tend to such an effect. . . .

"The difficulty, if not the actual impossibility, of preventing general traffic in intoxicating liquors, unless the possession thereof is confined to the home of the individual, as title II, section 33, of the act permits, is so apparent as to need no comment, and Congress cannot be held to have exceeded its power as is contended."

From the Circuit Court of Appeals of the Ninth Circuit we have *Page* v. *United States*, (1922) 278 Fed. 41, reviewing a case where the plaintiff in error had been charged with possession. He contended that section 3, title II, was

without vitality because Congress had no authority to prohibit possession. The court made answer:

"If, in order to enforce the constitutional amendment, it is necessary to restrict the possession of intoxicating liquor to those having permits to possess the same and to private houses when intended for the sole use of the owner and his family, and for *bona fide* guests, it is within the discretion of Congress to prohibit the possession as a means for the enforcement of the amendment."

The Circuit Court of Appeals of the Eighth Circuit reached the same conclusion in *Massey* v. *United States,* (1922) 281 Fed. 293, where legislation respecting possession of game, narcotics, burglar tools and lottery tickets furnished a precedent for interpreting the prohibition of possession of liquor.

In harmony with these decisions we find also: *Ex parte Ramsey,* (1920) 265 Fed. 950 (a case also from the southern district of Florida, it may be noted); *Rose* v. *United States,* (C. C. A. 6th, 1921) 274 Fed. 245; *Fitzhugh* v. *Mitchell,* (N. D. Cal. 1922) 277 Fed. 966; *Jordan* v. *United States,* (C. C. A. 9th, 1924) 299 Fed. 298; *Riggs* v. *United States,* (C. C. A. 4th, 1926) 14 Fed. (2d) 5; *Fritzel* v. *United States,* (C. C. A. 7th, 1927) 17 Fed. (2d) 965; and, *semble: Broens* v. *United States,* (C. C. A. 6th, 1923) 290 Fed. 809; *United States* v. *Club Chez Pieree,* (N. D. Ill., 1929) 31 Fed. (2d) 220; *Herter* v. *United States,* (C. C. A. 9th, 1929) 33 Fed. (2d) 402.

So far as we are aware, the federal Supreme Court has not spoken on the exact question under consideration. It has voiced its opinion with respect to an Idaho statute, however, in a manner strongly indicative of what its opinion would be. We quote from *Crane* v. *Campbell,* (1917) 245 U. S. 304 [62 L. Ed. 304, 38 Sup. Ct. Rep. 98]:

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift (etc.) of intoxicating liquors within its borders without violating the guaranties of the 14th Amendment. (Citing cases.)

"As the state has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate

or needful to render exercise of that power effective. (Citing cases.) And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose.''

We do not find in our state reports any such debate on the subject as has taken place in the federal courts. In several cases there appears comment explicable on the theory that the court had in mind that mere possession was not enjoined by the Wright Act, but only possession for the purpose of sale, or etc. For example, in *People* v. *Buttulia,* (1924) 70 Cal. App. 444 [233 Pac. 401], it is said that proof of sales: ''Would also tend to prove that his constructive possession of such liquor was for an illegal purpose.'' We find a statement to the same effect in *People* v. *Mullaly,* (1926) 77 Cal. App. 60 [245 Pac. 811]. That ''the jury was carefully instructed that the mere possession of intoxicating liquor is not a crime'' was set forth as a fact with seeming commendation in *People* v. *Gatlin,* (1928) 92 Cal. App. 42 [267 Pac. 564].

All these expressions of opinion, if they are such, that mere possession is no offense, are referable to the same source as the one clear statement contained in *People* v. *Medalgli,* (1928) 94 Cal. App. 543 [271 Pac. 552], where the jury had been told:

''You are instructed that in this class of offenses the intent is presumed from the doing of the act, that is, the mere doing of the act is sufficient to constitute the offense.''

In denying a rehearing the court criticised this instruction, saying:

''If by said instruction the court meant the mere proof of possession of intoxicating liquor was sufficient to constitute the offense without further proof that it was possessed for unlawful purposes, the instruction was erroneous.''

In support of its statement the court cited *People* v. *Silva,* (1924) 67 Cal. App. 351 [227 Pac. 976], *People* v. *Mattos,* (1924) 67 Cal. App. 346 [227 Pac. 974], *People* v. *Arnarez,* (1924) 68 Cal. App. 645 [230 Pac. 193], and *People* v. *Mullaly, supra.* In none of these cases was the interpretation of section 3, title 2, in controversy, and they are not authority for the conclusion that, in declaring ''pos-

session'' to be an offense, Congress and the state legislature are to be understood as having added the words, ''for the purpose of violating the law by some further act.'' Because we are to note these cases in another connection, we shall not analyze them at this time.

Opposed to these hints and this declaration we have hints equally strong in *People* v. *Mehra*, (1925) 73 Cal. App. 162 [238 Pac. 802], and *In re Baldwin*, (1927) 85 Cal. App. 165 [259 Pac. 119]. Moreover, we have two cases from which quotations are worthy of space. The petitioner in the case of *In re Moore*, (1924) 70 Cal. App. 483 [233 Pac. 805, 806], had been held to answer on a charge of selling intoxicating liquor. The court expressed grave doubt as to the sufficiency of the evidence as to the sale, but found plenty to prove possession, so denied his release, saying:

'' 'Possession,' says the court in *Beyer* v. *United States*, 282 Fed. 226, 'is a crime separate and distinct from the crime of the sale of liquor.' In section 3 of the National Prohibition Law it is expressly declared that 'no person shall . . . possess any intoxicating liquor except as authorized in this act.' Possession, therefore, except as authorized by the Volstead Act, is one of the acts which the Wright Act, by its adoption of the 'penal provisions' of the federal statute, denounces as a criminal offense.''

A similar exposition of the law appears in *In re Adams*, (1927) 85 Cal. App. 161 [259 Pac. 58]:

''The law of California prohibits the possession of alcoholic intoxicating liquors fit for use for beverage purposes containing more than one-half of one per cent by volume of alcohol, excepting only when the liquor was obtained before the act went into effect and is kept in the owner's dwelling for use therein by him, his family, and *bona fide* guests, or in certain cases where certain permits are granted either for medicinal use, or, in accordance with certain of the provisions of the act, allowing special permission under special circumstances. In other words, it is unlawful to possess intoxicating liquor not permitted by any statutory authorization.''

Among other authorities relied upon in the foregoing case are *Page* v. *United States, supra,* and *Rose* v. *United States, supra,* in both of which, as the court points out, the federal Supreme Court was petitioned, but declined, to take action.

It should be kept clearly in mind that we are dealing with possession prohibited by section 3 and not the possession that constitutes a nuisance under section 21 of the Volstead Act, considered in *People* v. *Mehra, supra,* and *People* v. *Mazzola,* (1927) 80 Cal. App. 583 [251 Pac. 222].

On this first of the three questions before us we take the position, therefore, that by the Wright Act, as by the Volstead Act, the possession of intoxicating liquor, except as expressly permitted by the act, is an offense; and the courts should not write into section 3, title 2, a further provision not placed there by the legislature, that possession is an offense only when coupled with an intent further to violate the law.

To the second question we find a happy unanimity of opinion. It is undoubtedly the rule that in charging possession it is not necessary to state that the possession is not one of the excepted classes. Because of the bearing the answer to this question has upon our remaining problem, more time will be devoted to a review of the cases than would be warranted in support of an unchallenged principle.

The case of *In re Lord,* (1926) 199 Cal. 773 [250 Pac. 714, 716], involved one convicted under the Poison Act. Objection was made that the complaint was insufficient in that it failed to allege that defendant's act was not one of those excepted by the statute. The court said:

"The authorities in this state are without conflict 'that such exceptions and provisos were to be negatived in the pleading only when they are descriptive of the offense or define it, and where they afford matter of excuse merely, they are to be relied on in defense.'"

The petitioner in *Matter of Lieritz,* (1913) 166 Cal. 298 [35 Pac. 1129, 1131], had been found guilty of violating the Wyllie Act. That act prohibited possession of liquor except in the home for guests, by a pharmacist, when stored where manufactured, etc. The information charging petitioner did not set forth that he was not in the favored group. This was met as follows:

"The excepted classes are not mentioned in the definition of the offense and it is therefore not necessary to enumerate them, nor to declare the defendant not a member of any one of them in drafting a complaint or information. The authorities almost without conflict declare that a complaint,

indictment, or information need not allege that an accused comes within exceptions mentioned in the statute upon which the prosecution is founded.''

To the same conclusion respecting charges, under the Wright Act we find: *People* v. *Cencevich,* (1923) 64 Cal. App. 39 [220 Pac. 448]; *In re Trauger,* (1927) 88 Cal. App. 59 [262 Pac. 780]; *In re Baldwin,* (1927) 85 Cal. App. 165 [259 Pac. 119].

■ It is not necessary, then, to plead that the possession charged is not of the character declared to be lawful. Must the People prove what they need not allege? Our answer is that they need not, and we believe that a study of the cases proves the unsoundness of the contrary conclusion enunciated in some of the decisions.

In two early cases in the history of the Wright Act in this state the defendants were charged with the sale of liquor. In each, for some reason, the court instructed the jury substantially in the language of section 33 of the Volstead Act, that possession of liquor was *prima facie* evidence that such liquor was kept for the purpose of being sold, etc., and that the burden was on the possessor to show that the liquor was lawfully acquired, possessed and used. Quite properly in each of the cases the court held this instruction erroneous, because the Wright Act had adopted only the penal provisions of the Volstead Act. In each case it was concluded, however, that the instruction was harmless,—in the one case because the question of possession was not involved; in the other because the possession proved could not have been lawful in any event. These two cases are *People* v. *Mattos,* (1924) 67 Cal. App. 346 [227 Pac. 974], and *People* v. *Silva,* (1924) 67 Cal. App. 351 [227 Pac. 976].

These cases were followed by the case of *People* v. *Arnarez,* to which reference has already been made. Here the defendant was charged with manufacturing liquor and a verdict was returned finding him guilty of possession of liquor. Possession, the court held, was a distinct offense not included within the charge of manufacturing, and the judgment was reversed. The same instruction condemned in the two preceding cases of Mattos and Arnarez had been given in this case, and again it was disapproved, reference being made to those cases.

Next in the procession is the case of *People* v. *Pagni,* (1924) 69 Cal. App. 94 [230 Pac. 1001]. Here the defendant was charged with possession, and here again an instruction substantially in the language of section 33 of the Volstead Act was given, to the effect that the burden of proof was upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used. Citing the Mattos, Silva and Arnarez cases, the court holds that this provision of the Volstead Act was not adopted and the instruction should therefore not have been given.

There follows the case of *People* v. *Buttulia,* (1924) 70 Cal. App. 444 [233 Pac. 401], in which the Mattos and Silva cases are cited and this conclusion given as justifying the admission of evidence of sales of liquor:

"In California, therefore, the burden rests upon the prosecution to prove the illegality of possession of intoxicating liquor and that is a material element of the offense."

The next in line is *People* v. *Mullaly,* (1929) 77 Cal. App. 60 [245 Pac. 811]. The trial court had instructed the jury that where the prosecution had made satisfactory proof of possession, the burden of proving any license or permit was upon the defendant. This the appellate court said was not in harmony with the Mattos, Silva, Arnarez and Pagni cases, but held the instruction without prejudice as "There was no pretense at the trial, however, that the defendant had the liquor lawfully or for a lawful purpose."

In *People* v. *Miller,* (1929) 97 Cal. App. 179 [275 Pac. 482], we find the latest approval of this doctrine, the Buttulia case being given credit for it.

The conclusion reached in the Pagni case and since approved, that the burden is on the state to establish the unlawfulness of the possession charged, is premised on the fact that the provisions of section 33 of the Volstead Act were not adopted by the Wright Act. This is a *non sequitur.* The provisions of section 32 were not adopted either, yet the rule otherwise recognized that exceptions need not be denied in a complaint continues to be the law. The Wright Act did not repeal any rules of procedure in California, and the determining question is not, "What part of the Volstead Act was not adopted?" but, "What prin-

ciples govern in the absence of that act?" There is no mistaking the answer.

In the same volume containing the Buttulia case we find *People* v. *Moronati,* (1924) 70 Cal. App. 17 [232 Pac. 991], where the defendant was convicted of having narcotic drugs in his possession.

"The trial court instructed the jury that it was not incumbent upon the People to prove that appellant did not come within any of these exceptions, and it is contended that the instruction was error. (5) It is well settled, however, that 'when the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party.' . . . The present case lies exactly within this rule. The instruction was therefore proper."

The case of *People* v. *Boo Doo Hong,* (1898) 122 Cal. 606 [55 Pac. 402], is a leading case on the question. There the Supreme Court upheld an instruction that the burden was upon the defendant charged with unlawful practice of medicine to establish that he had a certificate. The court quotes with approval from Greenleaf on Evidence, as follows:

"But when the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons, except those who are duly licensed therefor; as, for selling liquors, exercising a trade or profession, and the like. Here the party, if licensed, can immediately show it without the least inconvenience; whereas, if proof of the negative were required, the inconvenience would be very great."

In *Ex parte Hornef,* (1908) 154 Cal. 355 [97 Pac. 891, 893], the same conclusion is reached. The court said:

"If he had any such defense to the facts of the charge against him the time to make it was on his trial in the police court."

In *People* v. *H. Jevne Co.,* (1919) 179 Cal. 621 [178 Pac. 517, 520], the same principle was recognized, the court saying:

"The existence of such purpose affords, therefore, 'matter of excuse merely,' and is to be relied on in defense."

The rule has been applied in a prosecution for a violation of the Wyllie Act (Stats. 1911, p. 599). It will suffice to quote from the case, *People* v. *Dial*, (1915) 28 Cal. App. 704 [153 Pac. 970, 971]:

"So here, although the information in this case excludes the defendant from the excepted classes, the statement of such exceptions may be regarded as surplusage, and no evidence thereof was required to establish the charge. This was defensive matter, of which the defendant might avail himself by evidence if he so desired."

We believe the principle to be established, therefore, that in prosecuting an offender under the Wright Act for the possession of liquor, it is unnecessary for the People either to aver or prove that the case does not fall within the exceptions. We are not unmindful of the authority of the cases above reviewed, but believe the reasoning that leads to our conclusion is authority more binding on us.

The only exception applicable to the cases before us is that set forth in section 33, in these words:

"But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling, and of his *bona fide* guests when entertained by him therein."

With respect to this provision, the following quotation from *People* v. *Avila*, (1926) 78 Cal. App. 415 [248 Pac. 693, 695], is of interest:

"We think that section 33 of the Volstead Act, relative to the possession of intoxicating liquors for beverage purposes, which may be lawful, refers to and must be held to refer to intoxicating liquors procured prior to the date mentioned in section 3."

Supporting the same conclusion is the case of *People* v. *Jones*, (1926) 78 Cal. App. 554 [248 Pac. 964].

In three of the cases at bar, that is, *People* v. *Ruddick*, *People* v. *Jones*, and *People* v. *Paar*, it does not appear from the People's evidence how the liquor was acquired and no attempt was made by the defendants to show that it was possessed before the Volstead Act went into effect or that it was lawfully acquired since then. It follows that irre-

spective of other evidence in the cases, from which unlawful possession might be inferred, the convictions must stand.

In the case of· *People* v. *Coyne,* the defense was not that the liquor was lawfully possessed but that it was not possessed at all. The court's decision on this question of fact is not one to be disturbed by us.

The judgments appealed from must all be affirmed.

McLucas, P. J., and Shaw, J., concurred.

Rehearing denied.